## T. E. HEWITT v. FIRST NATIONAL BANK OF SAN ANGELO.

No. 3599.   Decided June 6, 1923.

(252 S. W., 161.)

**1.—Bank—Stopping Payment of Check—Notice.**

A National bank had its place of business fixed by its by laws at its banking house, and its hours of business from 9 till 3. A depositor who had given on Saturday night a check on the bank, notified its cashier on Sunday at his residence by telephone, to stop payment thereon, and he promised to make a written memorandum thereof and to stop its payment. The bank, as was its custom, opened its doors on Monday at 8 o'clock; the cashier was delayed by sickness in his family; the check was presented and cashed by the paying teller, who had received no stop notice, about 8:40, and before the cashier arrived. *Held* that notice to the cashier was under these circumstances notice to the bank, and it was liable to the depositor for the amount of the check so paid. (Pp. 103-108).

**2.—Same—Place and Hours of Business.**

The cashier is in general the agent of the bank; but for certain purposes, such as receipt of deposits or acceptance of checks, is clothed with such official character only at its place of business and during its business hours. But there is no absolute rule of law forbidding notice to the bank through him at another time and place. The ruling here made is confined to the particular facts involved. (Pp. 105-108).

**3.—Same—Sunday Law.**

The receipt by the cashier of notice to stop payment of a check on Sunday is not such transaction of business on that day as is prohibited by our Sunday laws. (P. 105).

**4.—Same—Acceptance of Notice.**

The act of the cashier in accepting notice on Sunday and at his residence, without objection to the time or place, and undertaking to stop payment of the check was one on which the drawer had a right to rely, preventing him from giving such notice on Monday and at the time the bank opened its doors. (P. 108).

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Tom Green County.

Plaintiff appealed from a judgment for defendant in the trial court and the case was there reversed and remanded (— S. W., —). Pending a motion for rehearing the question was certified to the Supreme Court and by them referred to the Commission of Appeals, Section B, for their opinion. This, being adopted by the Supreme Court, is certified as its answer.

*Anderson & Upton,* for appellant.

Notice to the cashier of a bank on Sunday is notice to the bank, unless it be alleged and proven by the bank that such notice was given to the cashier at a time or a place that the cashier could not convey same to the proper officers and employees of the bank. C. J., Vol. 7, p. 530, par. 134; Seminole First State Bank v. Shannon, 159 S. W., 398; Central Bank v. Ford, 152 S. W., 700; Mason First National Bank v. Ledbetter, 34 S. W., 1042; Hanover Insurance Co. v. Shrader, 32 S. W., 872, 33 S. W., 112.

A bank paying a check before the bank is open for business does so at its peril, and testimony as to a custom of leaving the doors unlocked from 8:00 o'clock until time for opening, fixed by the by-laws, is not admissible for any purpose. A customer of a bank desiring to stop payment of a check has until the time fixed by the by-laws for opening the bank in which to notify the bank of such desire, and testimony of a custom of transacting business at an earlier hour is not admissible.

If the cashier of a bank received notice from its customer on Sunday to stop the payment of a check given on Saturday night before, and the cashier made a written memorandum of such notice and request, and promised to attend to it, he was then acting for the bank, and the bank would be bound by his agreement, and if the check was paid after such notice, the bank is liable for the amount thereof.

The court erred in not granting and rendering judgment for plaintiff for the amount sued for, for the reason that the testimony shows that he did prior to the time of the presentation of said check, notify and instruct said bank not to pay said check, and that notwithstanding said request and instructions, defendant did pay said check and charge same to plaintiff's account. Same authorities cited above, and C. J., Vol. 7, page 698, par. 426; House v. Kountz, 43 S. W., 561.

*Hill & Hill,* for appellee.

Appellee, a National Banking Association, incorporated under the National Bank Act, and required by that act in Section 5190 of the Revised Statutes of the United States, as well as by its by-laws, made in pursuance of the authority of said act in Section 5136 of said statutes, to transact its business at its office or banking house and not elsewhere, cannot be held liable for nor bound by any notice or instructions given to its cashier away from the bank and its books and records on Sunday when the bank was closed for all business, said cashier having authority only to bind and obligate the bank in such transaction by the execution thereof at its office or banking house. Rev. Stats., U. S., Secs. 5190, 5136; Armstrong v. Second Nat'l Bank, 38 Fed., 883; Revised Civil Statutes, Art. 4606; Penal Code of Texas, Art. 299; State v. Country Club, 173 S. W., 578; Bullard v. Randall, 1 Gray, 605, 61 Am. Dec., 433; Morse Banks and Banking, Vol. 1, Section 169 (5th Ed.).

When the orderly and safe conduct of the bank's business requires a record to be made of the revocation in the books of the bank, a notice or instructions to stop payment given by the drawer to the cashier on Sunday when the bank is closed, and while he is away from the bank, is not notice or instructions to the bank, the drawer in such case making the cashier his agent to execute his instructions, and until he has done so, no liability is created against the bank. 1 Morse on Banks and Banking, Section 168, paragraph (b), page 381; Bullard v. Randall, 1 Gray, 605, 61 Am. Dec., 433.

The payment of a check, under the general custom and usage of banking, before the banking hours fixed by the by-laws, is not illegal nor in violation of or at variance with the by-laws, when they do not expressly forbid such payment. Butler v. Broadway Sav. Inst., 157 N. Y. Supp., 532.

The testimony of the cashier and paying teller of appellee's bank, that it was the general usage and custom of appellee and the other banks in San Angelo, before and after banking hours, to receive deposits, certify and pay checks and transact business at their banking houses, was properly admitted to show that the payment of appellant's check before banking hours was in the usual course of business of the bank and not negligence on the part of its paying teller. A depositor in a bank is charged with knowledge of the usage of the bank in dealing with its depositors and paying their checks. Renner v. Bank of Columbia, 9 Wheaton, 582; Mills v. Bank of United States, 11 Wheaton, 431; Bank of Washington v. Triplett, 1 Peters, 28; The Bank of Utica v. Smith, 18 Johns., 230; Lincoln and Kennebeck Bank v. Page, 9 Mass., 155, 6 Am. Dec., 52; 1 Greenleaf on Evidence (4th Ed.), Section 292; 1 Morse on Banks and Banking (5th Ed.), page 24, Section 9.

The safe and orderly conduct of the bank's business requiring a record of its books of stop payment instructions, a depositor cannot by notice to its officers at a time and place away from its banking house and when by law and the general usage and practice of banking it is closed for the transaction of any business, charge it with a liability for the non-performance of such instructions. Morse, Banks and Banking, 5th Ed., Sec. 168.

Appellee is not liable for the non-performance of the instructions of the appellant to its cashier, given on Sunday at his residence when he was not in the performance or discharge of any duty as such officer. M. K. & T. Ry. Co. v. Belcher, 88 Texas, 549; Teagarden v. Godley Lumber Company, 105 Texas, 616; Kaufmann v. Robey, 60 Texas, 308.

Appellee was not guilty of negligence in paying appellant's check. Butler v. Broadway Savings Institution, 157 N. Y. Supp., 532; Bank of Utica v. Smith, 18 Johns., 230.

MR. JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Third District:

"This suit was brought by appellant to recover from the appellee the sum of $700.00, paid by appellee upon a check given by appellant, the payment of which appellant had attempted to stop by notifying the Cashier of appellee, by 'phone at his residence, on Sunday, not to pay the same.

"The case was tried in the court below without a jury, and judgment was rendered for the defendant, appellee herein. Upon appeal to this court, we reversed the judgment of the trial court, and rendered judgment for appellant. A certified copy of our opinion herein accompanies this certificate, to which reference is here made. This cause is now pending in this court upon motion for rehearing.

"The undisputed facts are:

"1. The appellee is a national bank, and its place of business is fixed by its by-laws at 102 South Chadbourne Street, San Angelo, Texas, where it has its banking house.

"2. Its hours of business, as fixed by its by-laws, are from 9 a. m. to 3 p. m., but it has been its custom for many years, as is the custom of all other banks in San Angelo, to unlock its doors at 8 a. m., and, while the doors are not open, deposits will be received and checks paid from and after that hour, when customers enter the bank and so demand.

"3. Appellant was a customer of the bank. He lived in an adjoining county, and is not shown to have had actual knowledge of this custom of the bank.

"4. Appellant had on deposit with appellee, on Saturday, May 19, 1917, an amount in excess of $700.00. On that night he drew a check in favor of Luke Robinson for $700.00, and delivered same to Robinson.

"5. At this time C. H. Powell was, and for a long time prior thereto had been, the Cashier of appellee, having the general management of the affairs of the bank and full control over all of its employees.

"6. At this time N. S. Rives was, and for a long time theretofore had been, the paying teller in said bank, which fact was known to appellant.

"7. On Sunday following the giving of the check referred to, appellant called Powell over the 'phone, at his residence in San Angelo, which was about a half mile from the bank, and told him not to pay the check referred to. Powell replied that he would make a written memorandum of the matter, and attend to it when he returned to the bank.

"8. On Monday morning Powell was detained at his home by sickness in the family, and did not arrive at the bank until 8:40 a. m. Upon arriving at the bank, he instructed Rives not to pay the check referred to, and then learned from Rives that Robinson presented the check a few minutes before, and that the same had been paid.

"By reason of the novelty and importance of the issue of law here involved, the Supreme Court not having jurisdiction to grant a writ of error by reason of the amount involved, and being requested by appellee to certify such issue, we here submit to your Honorable Court the following question:

"Under the facts of this case, was the notice given by appellant to the Cashier of appellee notice to appellee?

"In this connection, we beg to call your Honors' attention to the fact that we did not assert, as contended by appellee in its motion for a rehearing, the general proposition that notice to the Cashier of a bank not to pay a check, given when the Cashier was not at the bank, was notice to the bank, but only that such notice under the facts of this case was notice to the bank."

It will be seen that the opinion of the Court of Civil Appeals herein, as well as the certificate, confines the rules of law discussed to the facts of this particular case. No effort is made to reach a conclusion applicable in any general sense. Therefore, the answer we shall recommend will be confined to similar limits.

We have carefully considered the extensive briefs filed by each of the parties hereto and made considerable independent investigation.

We have reached the conclusion that the Court of Civil Appeals in an able opinion by Justice Jenkins, has itself, correctly answered the question now under consideration. We think the latter opinion concisely, clearly and correctly answers the various contentions urged by counsel for the bank. We have read the authorities cited by Judge Jenkins and are of the view that they sustain his conclusions in every instance. We feel that we can not present these matters to the Supreme Court in any more helpful way than to quote as follows from the opinion of the Court of Civil Appeals:—

"When money is deposited in a bank the relation of debtor and creditor is thereby created. First State Bank of Seminole v. Shannon, 159 S. W., 398.

"A check drawn on a bank is not an assignment of any part of the fund against which it is drawn, until it is presented and accepted as paid. Bank v. Shannon, supra; Bullard v. Randall, 1 Gray, 605; 61 Am. Dec., 433; House v. Kountze, 43 S. W., 561.

"If the bank, in the instant case, paid the check after it was notified not to do so, it is liable to appellant. The only issue is: Was notice to the Cashier, under the circumstances stated in the findings of fact herein, notice to the bank?

"The cashier of a bank is usually its chief executive officer, and within the scope of his official duty he is the bank. Citizen's Bank of Senath v. Douglass, 161 S. W., 607; Third Nat'l Bank of St. Louis v. St. Charles Sav. Bank, 149 S. W., 495.

"We do not think that there is any merit in appellee's contention that the notice to Powell was ineffectual, because the same was given on Sunday. It is true that Sunday is a legal holiday, and, with certain exceptions, it is unlawful to labor on that day. R. S., Art. 4606; Penal Code, Art. 299. But Powell was not asked to perform any labor on Sunday. Certain information was imparted to him, upon which he was requested to act the next day.

"Nor do we think the legal principle that information obtained by an agent in the prosecution of his private business is not imputable to his principal, has any application to the facts of this case. Stopping the payment was not the Cashier's private business, but the business of the bank, and notice to him was notice to the bank. First Natl. Bank of Mason v. Ledbetter, 34 S. W., 1043; 1 Morse on Banking, p. 369-370.

"Even if we regard the Cashier as only an agent, and not the alter ego of the bank, still, as such agent, it was his duty to act upon the information he had received; and his knowledge that the drawer of the check desired that it be not paid was the knowledge of the bank. Central Bank & Trust Co. v. Ford, 152 S. W., 700; Citizen's Bank of Senath v. Douglass, 161 S. W., 602.

"It is the contention of appellee that the notice given to Powell was not binding on him, for the reason that he was not at the bank when the same was given. 'For some purposes, the Cashier is clothed with official character only at the banking house and in banking hours; for other purposes he remains clothed with it at all times and at all places.' 1 Morse on Banking, p. 378, sec. 168. Notice as warning may be given elsewhere. id. p. 379.

"There are some transactions which a bank can properly attend to only at its place of business. Thus a bank has vaults and safes, in which to safely keep its money, and books in which it is necessary to enter its transactions with its customers, in order that it may know the state of their accounts. These being kept in the bank, an officer has no right to receive deposits at a place other than in the banking house, and should he do so, he will be held to be the agent of the party delivering the funds to him, and not of the bank. The same is true as to a check presented to a cashier at a place other than in the bank. He has no authority to accept it. He may have known that the customer had funds in the bank when he left it, but they may have been drawn out within five minutes thereafter. It is for these obvious reasons that the law requires national banks to have a place of business, and that they are not authorized to transact their business elsewhere. U. S. R. S., Secs. 5136 and 5190; Autry v. Bank, [Armstrong v. Second Nat'l Bk. of Springfield] 38 Fed., 883; 1 Morse on Banking, Sec. 168; Bullard v. Randall, supra.

"In the instant case the Cashier was not required to transact any business away from the bank, but, acting upon the information which he had received, to stop the payment of the check at the bank. Though there were some things that he could not do as Cashier, except at the bank and within banking hours, he was as much the Cashier at home on Sunday as he was when he was in the bank, transacting its business on any other day of the week. The information which was received by him at his house on Sunday was given to him, not only because he was Cashier, but *as* Cashier, and was binding on him on Monday or any other day of the week.

"Appellee, reasoning from analogy, says that as the Cashier could not receive deposits, or pay or accept checks in behalf of the bank at any place other than in the banking house, for the reason that the vaults, safes and books are kept there, so, as the evidence shows that the bank is compelled to keep a stop-check register for the orderly conduct of its business, and that entries therein must be made at the bank where the same is kept, notice to the Cashier to stop the payment of a check, given at a place other than at its place of business, is not binding on the bank. We concede that such would be the case until the Cashier, by the use of reasonable diligence, was able to communicate such information to those in charge of the bank's business

during his absence, whose duty it would be, upon receiving such information, to make the proper entry in such register.

"In the instant case, no reason is shown why the Cashier, if he knew that he would not be at the bank when it was opened Monday morning, should not have communicated the information which he had received to the paying teller.

"In support of its contention that notice to an agent of a corporation must be given at his place of business, appellee cites Missouri, K. & T. Ry. Co. v. Belcher, 88 Tex. 549. In that case, notice was given to a local agent at Gainesville as to facts which if known to the agent at Sherman would have rendered the railway company liable. It was no part of the duty, and not within the apparent scope of the duty of the local agent at Gainesville to instruct the local agent at Sherman with reference to shipments to be made from that point. Had the facts been communicated to the general manager .of the road, the case would have been different; or had such notice been given to the local agent at Sherman, at a place other than at his office, the fact that he was not in his office when he received the information would not have excused him from using reasonable diligence to prevent the injury."

We do not think it can be seriously contended, in view of the authorities, that notice to stop payment of a check, when served upon a bank cashier, is ineffectual simply because not served in the banking house and during banking hours. On page 379, Vol. 1, 5th edition of Morse on Banks and Banking, we read:

"So, if any person wishes to impart information so as to warn the bank or to affect it with notice, it would be absurd to say that he could do so effectually only if he should make his communication to the cashier actually within the walls of the banking-house, and before it was closed to the public for the day. There would be no reason in such restrictions, and there is no law in their support. But if information be sought from the cashier, it should be sought at the banking-rooms, where he can have access to the books, papers, and records."

Nor do we think it can be said that it is unlawful for a bank cashier to receive information of this kind on Sunday. If so, he could not lawfully receive a telegram or special delivery letter. In the case at bar, the communication happened to be by telephone. We have not found any court decision holding it unlawful to receive information of this kind on Sunday. We do not think this would constitute working on Sunday within the purview of our statutes.

In this case, the bank undertakes to escape liability, so far as this notice was concerned, because of an alleged infraction of its by-laws fixing its home office within certain hours as its place of business, and, yet, the record further shows that payment of this check would have been stopped had the bank, itself, observed its own by-laws and not

opened for business before nine o'clock on Monday morning. In the same suit it invokes one infraction to excuse itself and condemns another.

There is an equitable phase to this case which appeals to us most strongly, and we think to hold this notice ineffectual would work grave injustice. When the cashier was called over the telephone, he made no objection to talking this much bank business on Sunday, or when away from the bank. On the contrary, he seems to have accepted the notice without any protest, promising to make a written memorandum and attend to it next morning. It was natural, therefore, for Hewitt to conclude that he could rely upon this promise of the cashier and make no further efforts himself to save his money. Had the cashier objected to the notice for any reason and refused to accept it, the drawer of the check would, at least, have had an opportunity to go to the bank in person by the time it opened on Monday morning and served the notice there. We do not say whether or not, as a matter of law, a cashier could refuse to receive this notice over the telephone at his home on Sunday. That question is not before us. But, we do say that the action of the cashier in the case at bar, in receiving the notice as he did, very naturally lulled Hewitt into a sense of security and kept him from acting further in his own behalf in person.

Hewitt had given this check on Saturday night. He naturally feared it would be presented at the bank Monday morning, as it was, and before office hours at that. Confronted with that emergency, he called the cashier on Sunday to give him notice at once in order that the bank might know of his wishes immediately upon opening Monday morning. This cashier had in his hands "the general management of the affairs of the bank and full control of all its employees." He knew the custom of the bank to open at eight o'clock in the morning. Hewitt had a right to expect him to diligently execute the promise he had given and to stop the payment of this check at the bank when it opened on Monday morning, either in person or by message to the proper employee.

Under the facts of this case, we are clearly of the view that this notice to the cashier was notice to the bank.

Therefore, we recommend that the certified question herein be answered in the affirmative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,*
Chief Justice.