### REGAN et al. v. ELIZONDO.

No. 2993.

Court of Civil Appeals of Texas. El Paso.

June 14, 1934.

Rehearing Denied July 30, 1934.

Turney, Burges, Culwell & Pollard, and Whitaker & Peticolas, all of El Paso, for appellants.

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellee.

WALTHALL, Justice.

This is the second appeal of this case. See (Tex. Civ. App.) 37 S.W.(2d) 1058. The Commission of Appeals reversed and remanded the case on account of misconduct of the jury. 55 S.W.(2d) 540. We refer to the case on appeal in the two courts for a fuller statement of the history of the case than we think necessary to make here. Since the former trial the First National Bank became insolvent and S. O. Pottorff was joined as defendant's receiver upon the allegation that said bank held funds of defendant Regan in its possession to guarantee the performance on Regan's part of the contract involved here between Elizondo and Regan.

In this suit plaintiff below, appellee here, J. H. Elizondo, sues J. J. Regan for alleged breach of a contract for the purchase by Regan from Elizondo of 550 head of steers and stags. The contract is as follows:

"This contract made and entered into by and between Don Jesus H. Elizondo, party of the first part, and J. J. Regan, party of the second part, both of El Paso, Texas.

"Party of the first part sell to the second part five hundred and fifty head of cattle, five hundred at seven cents per pound and fifty head at six and a half per pound, cattle to be weighed on arrival at the stock yards at El Paso, all cattle to be weighed together and fifty average cattle at six and a half cents.

"If anything happens that said cattle do not pass over to El Paso the day they arrive then in that event the party of the first part shall have the right to feed and water the cattle but shall not be allowed to weigh them for fifteen hours after being fed and watered.

"Party of second part will order the cars.

"All cattle delivered under this contract must be merchantable.

"All cattle delivered must be steers and stags.

"A guarantee will be made from the First National Bank of El Paso, Texas, to the Banco de National of Durango of five thousand dollars evidenced by a check of like amount signed by the party of the second part and given to the party of the first part, and shall be forfeited if cattle are delivered according to the contract.

"Cattle will be delivered on or about February 18th, 1930, El Paso Stock Yards."

The contract is signed by each of the parties.

Elizondo delivered the cattle at El Paso, Tex.; Regan refused to accept the cattle, and Elizondo sues Regan and asks judgment against him for $9,000, and for judgment against S. O. Pottorff as receiver of the First

National Bank of El Paso, as guarantor to the extent of $5,000, the amount the bank guaranteed to the Banco de National of Durango as in the contract.

The facts submitted to and found by the jury on special issues reflect the material issues presented by the pleadings and the evidence. They are as follows:

The jury found that all the cattle offered by the plaintiff Elizondo to the defendant Regan at the stockyards at El Paso were merchantable at the time they were so offered; the cattle, in contemplation of the plaintiff Elizondo and defendant Regan at the time of signing the contract introduced in evidence and dated February 8, 1930, were the cattle inspected in Mexico by W. D. Connell, defendants' agent, prior to the signing of the contract; all of the cattle tendered by plaintiff Elizondo to defendants in the stockyards at El Paso, Tex., were the same cattle inspected by defendant's agent, W. D. Connell, prior to the signing of said contract; none of the cattle tendered by the plaintiff Elizondo to defendant Regan in the stockyards at El Paso, Tex., were unmerchantable; the amount of money that was reasonable and necessary for Elizondo to expend in making the sale of the cattle after they reached El Paso was $3,358.

In the judgment the trial court found upon the pleadings and evidence and the verdict of the jury that plaintiff Elizondo should recover of defendant Regan the sum of $9,-993.70, with interest from the date of the judgment, and costs; that the issues between S. O. Pottorff, receiver, and Elizondo and Regan were left to the decision of the court, and the court found that Pottorff, receiver, should pay to Elizondo the sum of $5,000 to be credited on the judgment; that the right of Elizondo to receive said sum of $5,000 from Pottorff, receiver, is "as to the sum of $100,000.00 in cash, received by S. O. Pottorff, Receiver of The First National Bank of El Paso, Texas, at the time that he qualified as said receiver, a preferred claim, entitled to preference in payment as against all of the general creditors of the First National Bank of El Paso, Texas." The court so entered judgment and directed that said payment of $5,000 be made by Receiver Pottorff with preference over the general creditors of the First National Bank of El Paso, Tex., out of the assets of the bank remaining in the possession of said receiver. It was ordered that Regan take nothing by his cross-action.

The court overruled the motions of defendants Regan and Pottorff, receiver, for a new trial, to which each excepted, gave notice of appeal, and each have duly perfected an appeal to this court.

### Opinion.

■ The first issue of fact submitted to the jury for its finding was whether all the cattle offered by Elizondo to Regan at the stockyards at El Paso were merchantable at the time they were so offered. In discussing the above issue to the jury in the opening argument, one of plaintiff's counsel stated to the jury, in substance, that all of the issues submitted by the court were "important"; in discussing the first issue counsel stated to the jury that "the answer to that question was of vital importance," and he urged the jury to find "that all of the cattle were merchantable," and stated that the jury "should find that 550 head of the cattle were merchantable, not 549." The bill of exceptions states that "he (counsel) emphasized the fact that question No. One was an important question, and would be vital in the final decision of the case, and was quite emphatic in his statements that the jury should answer that all 500 head of the cattle tendered were merchantable."

The issue submitted was important. Plaintiff had based his right to recover on the contract which provided: "All cattle delivered under this contract must be merchantable." Regan alleged that "a part of the cattle were not merchantable." The evidence on the issue was in conflict. Elizondo had tendered the cattle as being all merchantable, and Regan had refused to receive the cattle as being not all merchantable.

We have concluded that reversible error is not made to appear.

■ By trial amendment it is stated that H. D. Mollahan had an interest with Elizondo in the cattle involved here. The contract of sale of these cattle was made on February 8, 1930, for delivery on February 18, 1930.

On the trial Regan offered in evidence a part of a letter written by H. D. Mollahan of date September 16, 1929, to Whitaker & Fryer. The part of the letter offered is as follows: "I went in business with two Mexicans here in the cattle business. We are buying cattle down here and will sell them to a buyer from the U. S. Mr. Whitaker if you got any friends that want 500 big steers that weigh 1000 pounds send them to me."

We have read the evidence of the several witnesses previously offered in connection with which the above extract from the letter was offered. Regan submits that the portion of the letter offered in evidence was admis-

sible on the issue submitted whether the steers referred to in the letter were steers inspected by Connell prior to the signing of the contract. The evidence does not show that they were; but if they were the letter referring to them as "big steers that weigh 1000 pounds" would not be proof of their weight. There is nothing in the contract that Regan was to get the steers referred to in the letter; nor does the evidence tend to show whether the steers tendered were or were not the steers referred to.

We have concluded that the steers referred to in the letter as to their identity or weight is too indefinite and uncertain to connect them in any way with the cattle involved in this controversy to have any probative force.

The court submitted to the jury the question as to the amount of money that was reasonable and necessary for Elizondo to expend in making sale of the cattle after they reached El Paso. The parties agreed that $3,138 was the price paid for feed during the time the cattle were held in El Paso after they were brought from Juarez until they were disposed of. The court instructed the jury that if it was necessary to incur expenses for meals and hotel the jury could allow a sum not to exceed $100, and a similar charge as to expense as to an interpreter and necessary transportation. The evidence shows an expenditure of more than the court allowed in the charge. The jury found $3,358.

■ Regan submits that having offered to accept and pay for 300 head of the cattle at the contract price while the cattle were in Juarez, Mexico, which offer Elizondo refused, he was not entitled to recover for taking care of the 300 head, and it was error to submit to the jury any finding on expenses for the 300 head.

The evidence shows that while the cattle were in Juarez, Mexico, Regan and Elizondo had a conversation about the cattle, in which Regan claimed the cattle were not up to the contract, and offered to cut the cattle as he classed them under the contract and offered to take 300 of them and pay for them when they arrived across the river, and if the others were the cattle Connell bought he would pay for them also. Elizondo refused to let the cattle be cut in Juarez and required that Regan take all the cattle or none, which Regan refused to do. The cattle were brought to the stock pens in El Paso where, under the contract, they were to be weighed on arrival and there received and paid for. We think the record shows no error in submitting the charge complained of.

We have carefully considered appellant Regan's propositions not severally discussed and have concluded, in view of the entire record, they present no reversible error.

■ Appellant S. O. Pottorff, receiver of the First National Bank of El Paso, under several propositions submits that the court was in error in directing him as receiver to pay over to Elizondo the sum of $5,000 to be credited upon the judgment in favor of Elizondo against J. J. Regan as of the date of the judgment, as a preferred claim.

The trial court found, and so expressed in the judgment, that: "The right of the plaintiff to receive said sum of $5000.00 from the said S. O. Pottorff, Receiver, is, as to the sum of $100,000.00 in cash received by S. O. Pottorff, Receiver of the First National Bank of El Paso, Texas, at the time that he qualified as said Receiver, a preferred claim, entitled to preference in payment as against all of the general creditors of the First National Bank of El Paso, Texas."

In the contract between Regan and Elizondo for the sale and purchase of the cattle it was stipulated: "A guarantee will be made from the First National Bank of El Paso, Texas, to the Banco de National of Durango of Five Thousand Dollars evidenced by a check of like amount signed by the party of the second part (Regan) and given to the party of the first part (Elizondo), and shall be forfeited if cattle are delivered according to the contract."

The uncontroverted testimony shows that W. D. Connell, acting for Regan in the matter of the contract for the purchase of the cattle pursuant to said contract, drew a check on Regan's checking account on the First National Bank of El Paso, Tex., and delivered the check to the bank officer who was acting for the bank in the matter. The check stated: "This check to be paid on conditions of contract attached when cattle are delivered El Paso." The bank upon receipt of the check charged it to Regan's account and sent the following telegram to the Banco de National: "We guarantee payment of check five thousand dollars signed J. J. Regan by W. D. Connell, dated February 8th, 1930, favor Jesus H. Elizondo, upon acceptance and delivery of 550 head cattle with all other conditions complied with in contract of February 8th, 1930, between J. J. Regan and J. H. Elizondo attached to check." The bank officer then caused cashier's check for $5,000 to be issued in lieu of Regan's said check, which was charged to Regan's account and the cashier's check was held in the bank until it closed.

This cashier's check was in the possession of the bank with the escrow papers when the bank closed and the receiver was appointed. Prior to its insolvency the bank in its answer alleged itself to be a stakeholder of the $5,000 and tendered same into court. Since then the receiver claims that Elizondo is a general creditor and not a preferred creditor and makes the contentions that the facts do not show a special deposit or trust fund of any nature was created in the bank as to the $5,000, but was simply a transfer of credit from Regan's checking account to the escrow account of Regan and Elizondo, a booking transaction solely; that the transactions show that the assets of the bank were in no wise augmented; that Elizondo was but a common or general creditor of the bank; and that it was error to render a judgment against the receiver for the full amount of the $5,000.

The findings of the jury on the facts, and the judgment of the court based on the facts found, concludes the issues between Regan and Elizondo in the matter of the contract for the sale and purchase of the cattle. On Regan's check the bank transferred to itself from Regan's checking account the sum of $5,000, and with that sum paid in the bank guaranteed to the Banco de National of Durango, Mexico, the payment of that amount on the compliance of the conditions stipulated in the contract. The sum of $5,000 having been deposited by Regan into the bank for the specific purpose of guaranteeing the performance of the contract on the part of Regan, and the bank having accepted to guarantee the performance of the contract by Regan, and did so guarantee, appellee Elizondo makes the contention that the transactions as stated create a trust on the part of the bank as to the $5,000, and that said sum in the hands of the receiver should be delivered to Elizondo to be credited upon the judgment as a preferred claim, entitled to preference in payment as against all general creditors of the bank.

The rule has often been stated by both federal and state courts that the acceptance of money or property delivered by one person to another for a specific purpose, the one to whom the money or property is delivered becomes a trustee as to such money or property, and such delivery and acceptance creates a trust. But as we understand the rule it applies to the specific or identical money or property so delivered and accepted for delivery.

In this case had Regan delivered to the First National Bank $5,000 to be delivered by the bank to Elizondo on the performance of the contract, and the bank had accepted, to deliver to Elizondo, the identical money received by it, on the performance of the contract, the bank would be the trustee of the money and the money would be a trust fund. But such are not the facts. Here the record shows a transfer of credit from Regan's checking account to the escrow account of Regan and Elizondo. The escrow account, by the transaction, had a credit with the bank of $5,000. There is no agreement that the identical money, the proceeds of Regan's check, was to be placed to the escrow account, or be paid to Elizondo. Evidently the money, the proceeds of the Regan check, were to go into the funds of the bank to enable the bank to guarantee the performance of the contract by Regan. In other words, to the amount of $5,000, the bank having the money took the place of Regan in paying for the cattle; it extended its credit to that extent and for that purpose. As said by Judge Huff for the Amarillo Court, in First State Bank v. Shannon (Tex. Civ. App.) 159 S. W. 398, when a general deposit is made it is not contemplated that the identical money shall be returned, but the relation of debtor and creditor arises between the parties. The deposit of the $5,000 with the bank created the relation of debtor and creditor, and implies an obligation to repay the money on demand. We refer to the case and the authorities used without quoting from the case at length. A writ was refused. The Commission of Appeals referred to the case with approval in considering Hewitt v. First National Bank, 113 Tex. 100, 252 S. W. 161.

In Austin, Banking Com'r et al. v. Lacy et al. (Tex. Civ. App.) 2 S.W.(2d) 876, 879, 880, it is said: "When a commodity is deposited in a bank as money, and credit therefor taken on the books of the bank, the title to the paper, in the absence of fraud or agreements to the contrary, passes to the bank, and the relation of debtor and creditor arises between the bank and the depositor. Hewitt v. First Nat. Bank, 113 Tex. 100, 252 S. W. 161; Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; 3 R. C. L. p. 524."

Held that no trust was created.

We have concluded the court was in error in rendering judgment for $5,000 allowing preference over common creditors of the bank.

It is therefore ordered that the judgment of the trial court establishing appellee's claim as a preferential one be reversed and here reformed and rendered so as to decree a re-

covery against the receiver as on a general deposit and not as a preferred claim.

In all other respects the judgment is not disturbed.

Justice HIGGINS was disqualified and did not sit in this case.