## Hunsberger v. National Bank & Trust Company of Schwenksville

*Harry J. Alker, Jr.,* and *Lloyd H. Wood,* for plaintiff.

*Ralph F. Wismer* and *A. Clarence Emery,* for defendant.

DANNEHOWER, J., March 12, 1940.—Plaintiff, a depositor in the bank of defendant, brought this action in assumpsit to recover the sum of $1,525, the amount of a check drawn by him upon the bank and deducted from his account, on which he had ordered payment stopped.

The jury rendered a verdict in favor of plaintiff depositor for the amount of the check, together with interest. Defendant has filed a motion for a new trial, alleging that the verdict was against the law, the evidence, and the weight of the evidence; which motion, after argument, is pending for decision.

The testimony discloses that on Saturday, May 21, 1938, plaintiff gave a check to Norman Troxel in the sum of $1,525 drawn on plaintiff's account with defendant bank. This sum represented 10 percent of the purchase price of a farm property which plaintiff by written contract had agreed to purchase from Troxel. On the following day, Sunday, May 22, 1938, when plaintiff and Troxel met at the property, a dispute arose, and plaintiff determined to stop payment on the check. Plaintiff from his home at Collegeville telephoned the president of defendant bank at Schwenksville, who was not at home. That Sunday evening he called at the Schwenksville residence of the cashier, Jonathan Miller, and according to plaintiff he instructed the cashier to stop payment on the check, which order was accepted by Miller. Miller testified that the bank opened at about 7 a.m. and his duties did not require him to be there until 8 a.m., and that he accepted the stop-payment order on condition that the check had not been cashed before he arrived at the bank. The teller testified that Troxel cashed the check at 7:50 a.m., about 10 minutes before the cashier arrived at the bank, and that she so informed the cashier when he notified her about the check. Miller admitted that when plaintiff called him on the telephone at about 9 a.m., he informed him that Troxel had not cashed the check or been in the bank, because he was assured that Troxel would return the money to the bank.

The issue of fact raised by this contradictory testimony was whether the cashier accepted the stop order unconditionally as contended by plaintiff, or conditionally, as contended by defendant. The finding of the jury that plaintiff gave and defendant received unconditionally a

timely stop-payment order is amply supported by the law, the evidence, and the weight of the evidence.

As a general rule, the drawer of a check can revoke it, or, in banking phraseology, "stop payment", at any time before the bank's certification, acceptance, or payment of the check, and the bank is bound by such revocation and has no right to pay the check after notice thereof: 9 C. J. S. 692, §344. In the case of Wall v. Franklin Trust Co. of Phila., 84 Pa. Superior Ct. 392, 394 (1925), the court said:

"It may be considered a general rule in this State that an open deposit held by a bank is subject to the order of the depositor, and with respect to the person to whom it is to be paid, the bank is the agent of the depositor. A check is neither a legal nor equitable appropriation of a corresponding amount of the depositor's funds in the bank, nor does the payee named in the check acquire through it a right of action against the bank nor title to any part of the deposit of the maker in the possession of the bank. As a check is merely an order on the bank to pay from the maker's account, it may be revoked at any time before it is paid or accepted. Where a check is issued and afterward the maker decides to recall it, he may notify the bank not to pay it and this instruction the latter is bound to observe if the notice be in time. Money on deposit in a bank to the credit of the depositor continues to be his, notwithstanding he may have given a check against the whole or a part of it, and it only becomes the property of the payee when lawfully paid to him by the bank. The usual method of stopping payment of a check is by notice to the bank on which the check is drawn, and if payment be made after such notice, the bank does so at its peril: German National Bank v. Farmers Bank, 118 Pa. 294."

"Any timely act of the drawer of a check is sufficient as an order to stop payment if it conveys to the bank a definite instruction to that effect. Such an order may be either oral or written . . . It may be conveyed to any officer or employee of the bank authorized to receive it,

and may be delivered to him after banking hours when he is not at the bank": 9 C. J. S. 694, §344b.

A case which seems to be squarely in point is Hewitt v. First National Bank of San Angelo, 113 Tex. 100, 252 S. W. 161 (1923). In that case a depositor notified the cashier of the bank by telephone on Sunday not to pay a check, and the cashier promised to attend to it, whereby the depositor took no further steps to protect his money. On Monday the cashier was detained at his home by illness in the family, and did not arrive at the bank until 8:40 a.m. The check was paid before he arrived at the bank. The court held that the bank was liable for the money so paid, notwithstanding it was a custom of the bank to open before the usual banking hours, since the cashier, knowing of such custom, should have been at the bank when its doors were unlocked, or, if he knew that he would not be at the bank when it was opened Monday morning, he should have communicated the information which he had received to the paying teller.

Counsel for defendant earnestly contended that, since a contract for the sale of realty had been made by the drawer and the payee, the bank might pay the check notwithstanding a notice not to do so, and that in defense the bank might show that it was drawer's legal duty to pay the payee the amount of the check. An obvious objection to this contention is that it would permit the drawee to exercise its judgment as to whether the check should be paid or not, and try an issue between the drawer and the payee of the check as to whether the former was legally indebted to the latter. Such a contention is not consistent with the general principle of law that a check is an order merely and is subject to revocation before payment is made. The obligation of the bank is to pay on the order of the depositor, and notice not to pay the check being the last direction on the subject is binding on the bank.

Under the testimony and the law, we can find no legal reason for disturbing the verdict of the jury.

And now, March 12, 1940, for the foregoing reasons, defendant's motion for a new trial is overruled and refused, and exception allowed defendant.