

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

May 5, 1971

Honorable David W. Ratliff, Chairman
Senate Committee on Banking
The Senate of the State of Texas
State Capitol
Austin, Texas

Honorable Neal Solomon, Chairman
House Committee on Banks and Banking
State House of Representatives
State Capitol
Austin, Texas

Opinion No. M-849

Re: Constitutionality of
House Bill No. 566
and Senate Bill No.
409, now pending in
the 62nd Leg., R.S.,
1971.

Gentlemen:

You request our opinion as to the constitutionality of House Bill No. 566, as it would be amended by a proposed Committee Amendment, and Senate Bill No. 409, both now pending before your respective Committees in the 62nd Legislature, Regular Session, 1971.

The proposed Committee Amendment submitted by you for our consideration would make House Bill No. 566 [1] read as follows:

" A BILL TO BE ENTITLED AN ACT amending Art. 342-903, Revised Civil Statutes of Texas, as amended, concerning the prohibition of Branch Banking; and declaring an emergency.

" BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. Art. 342-903, 'Branch Banking Prohibited,'
Revised Civil Statutes of Texas, 1925, as enacted by

---

1     Hereinafter referred to as H. B. 566.

-4115-

Chapter 123, Sec. 1, Acts 1959, 56th Legislature, as amended, is amended to read:

"Art. 342-903.  Branch Banking Prohibited.

"No state, national or private bank shall engage in business in more than one place, maintain any branch office, or cash checks or receive deposits except in its own banking house.  For purposes of this Article 'banking house' means the building in whose offices the business of the bank is conducted and which  is functionally one place of business, including (a) office or automobile drive-in facilities whose nearest wall is located within five hundred (500) feet of the nearest wall of the central building and is physically connected to the central building by tunnel, passageway or hallway providing direct access between the central building and the connected office or automobile drive-in facility or by pneumatic tube, closed circuit television or other similar means of communication, and (b), in addition, not more than one (1) automobile drive-in facility whose nearest boundary is located within one thousand eight hundred fifty (1,850) feet of the nearest wall of the central building and is connected to the central building by tunnel, passageway or hallway providing direct access between the central building and the connected automobile drive-in facility or by pneumatic tube, closed circuit television, or other similar means of communication.  The entire banking house shall for all purposes under the law be considered one integral banking house.

"Section 2.  Emergency Clause.  The importance of this legislation and the crowded condition of the calendar in both houses create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each house be suspended, and the Rule is hereby suspended; and that this Act take effect and be in force from and after its passage, and it is so enacted. "

Senate Bill No. 409 reads as follows:

" A BILL TO BE ENTITLED AN ACT amending Article
3, Subchapter IX, the Texas Banking Code of 1943, as
amended (Article 342-903, Vernon's Texas Civil Statutes),
concerning the prohibition of branch banking; and declaring
an emergency.

" BE IT ENACTED BY THE LEGISLATURE OF THE
STATE OF TEXAS:

"Section 1. Article 3, Subchapter IX, the Texas Bank-
ing Code of 1943, as amended (Article 342-903, Vernon's
Texas Civil Statutes), is amended to read as follows:

"Article 3.   Branch Banking Prohibited.

"No state, national or private bank shall engage in busi-
ness in more than one place, maintain any branch office,
or cash checks or receive deposits except in its own bank-
ing house. For purpose of this Article 'banking house'
means the building in whose offices the business of the bank
is conducted and which is functionally one place of business,
including office facilities whose nearest wall is located with-
in one thousand, eight hundred fifty (1, 850) feet of the near-
est wall of the central building and is connected to the cen-
tral building by tunnel, passageway or hallway providing
direct access between the central building and the connected
office facility or by pneumatic tube, closed circuit tele-
vision, or other similar means of communication. 'The en-
tire banking house shall for all purposes under the law be
considered one integral banking house.

"Section 2.  The importance of this legislation and the crowded
condition of the calendars in both houses create an emergency
and an imperative public necessity that the Constitutional Rule
requiring bills to be read on three several days in each house
be suspended and be in force from and after its passage, and
it is so enacted. "

The Bills as hereinabove quoted propose to amend Article 342-903,
Vernon's Civil Statutes, which now reads as follows:

"No state, national or private bank shall engage in business in more than one place, maintain any branch office, or cash checks or receive deposits except in its own banking house. For purposes of this Article, 'banking house' means the building in whose offices the business of the bank is conducted and which is functionally one place of business, including office facilities whose nearest wall is located within five hundred (500) feet of the nearest wall of the central building and is physically connected to the central building by tunnel, passageway or hallway providing direct access between the central building and the connected office facility or by pneumatic tube or other similar carrier. The entire building house shall for all purposes under the law be considered one integral banking house."

Only the first sentence of this Article appeared in the statute prior to 1957. In that year additional provisions were added, and these were amended in 1959 and 1963, making the Article to now read as quoted above.

This Office has never issued an opinion as to the constitutionality of the 1957 amendment or the 1963 amendment to Article 342-903, and nothing in this present opinion is intended as a ruling thereon.

Article XVI, Section 16 of the Constitution of the State of Texas, reads as follows:

"The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

"No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash. Such body corporate shall not be authorized to engage in business at more than one place which shall be designated in its charter.

"No foreign corporation, other than the national banks
of the United States, shall be permitted to exercise bank-
ing or discounting privileges in this State." (As amended
Aug. 23, 1937.) (Emphasis added.)

We are thus confronted with the question as to whether the Consti-
tution of the State of Texas, which states ". . . Such body corporate shall
not be authorized to engage in business at more than one place which shall
be designated in its charter . . ." is to be enlarged upon by authorizing a
bank to operate a drive-in facility located five or six blocks away (1,850
feet) from its main banking house and connected each to the other by only
pneumatic tube, closed circuit television, or other similar means of com-
munication. In other words, the basic question presented by the proposed
legislation is whether the bills would authorize a bank to engage in business
at a place other than the "one place which shall be designated in its charter,"
as prohibited by the Constitution. It is clear that the "office facilities"
authorized in S. B. 409 and their counterpart, the one additional drive-in
facility authorized in the proposed amendment to H. B. 566, would be en-
gaged in the business of banking.

The business of banking or "banking house" has been defined by our
Legislature, in the past, and there is no restriction in the Constitution to
prohibit the Legislature from defining the business or place of a banking
house so long as it stays within Section 16 of Article XVI.

Black's Law Dictionary, Fourth Edition, defines a bank as "The
house or place where the business of banking is carried on."

The Court quoted with approval the following definition of a bank
in the case of Kaliski v. Gossett, 109 S. W. 2d 340, (Tex. Civ. App. 1937,
error ref.):

"In the case of In re Prudence Company (C. C. A.) 79
F. 2d 77, 79, we find the following definition of a bank:
'Strictly speaking the term bank implies a place for the
deposit of money, as that is the most obvious purpose
of such an institution.'"

In the case of Hewitt v. First Nat. Bank of San Angelo, 113 Tex. 100,
252 S. W. 161 (1923), the Court said, with reference to the locale of a bank:

-4119-

"There are some transactions which a bank can properly
attend to only at its place of business. Thus a bank has
vaults and safes, in which to safely keep its money, and
books, in which it is necessary to enter its transactions
with its customers, in order that it may know the state of
their accounts. These being kept in the bank, an officer
has no right to receive deposits at a place other than in
the banking house, and should he do so, he will be held to
be the agent of the party delivering the funds to him, and
not of the bank. The same is true as to a check presented
to a cashier at a place other than in the bank. He has no
authority to accept it. He may have known that the customer
had funds in the bank when he left it, but they may have been
drawn out within five minutes thereafter. It is for these ob-
vious reasons that the law requires national banks to have a
place of business, and that they are not authorized to trans-
act their business elsewhere. U. S. R. S. § § 5136 and 5190;
Autry v. Bank, 38 Fed. 883; Morse on Banking, § 168;
Bullard v. Randall, supra. " (at pp. 162-163. )

Both Bills would change the allowed geographic separation between th
central building and the most distant automobile drive-in facility from 500 t
1,850 feet, and would allow the connection between them to be limited to
". . . pneumatic tube, closed circuit television, or other similar means of
communication . . .", thus doing away with all semblance of any other di-
rect physical connection between these two components of the "banking house
as defined in both the House and Senate Bills.

It is apparent that both Bills would provide for banking facilities at
two widely separated and distinctly different locations with no direct physica
connection between them except possibly a pneumatic tube.

Great Plains Life Insurance Company v. First National Bank of Lubbo
316 S. W. 2d 98 (Tex. Civ. App. 1958, error ref. n. r. e. ), involved a suit on a
contract whereby Great Plains Life Insurance Company leased certain space
the First National Bank of Lubbock. The leased space was connected to the
bank by a tunnel and a pneumatic tube across the street from the bank. The
plaintiff life insurance company was seeking to cancel the lease upon the grou
among others, that the leased space constituted a branch bank within the pro·
hibitions of Section 16 of Article XVI of the Constitution of Texas and Article

342-903, Vernon's Civil Statutes.    The Court held that the leased premises were "nothing more than a part of the appellee bank. " We concur in this holding.    However, the Court went further and quoted with approval the Kentucky case of Marvin v. Kentucky Title Trust Co. , 291 S. W. 17, (Ky. Ct. App. 1927) where the Court declared:

> ". . . If such additional offices can be established at different points in the main building under the bank's control, no good reason appears why they may not be established elsewhere throughout the city of its location for the same purpose . . ." (at p. 18. )

The Commissioner of the Department of Banking has advised this office that:

> ". . . it has been the long time departmental construction that a bank may do business in only one place or location in one city or town.   Within our knowledge no state bank is currently doing business in more than one place or location in one city or town. "

Departmental construction or practice pursuant to the provisions of the Constitution or statutes are to be given great weight.   City National Bank of Austin v. Falkner, 428 S. W. 2d 429, (Tex. Civ. App. 1968, writ ref. n. r. e. ); Werlein v. Calvert, 460 S. W. 2d 398 (Tex. Sup. 1970. )

It is. noted that in conformity with the Banking Commissioner's interpretation of the Constitution and statutes, that no state bank has attempted to do business at more than one location by h aving a drive-in window, which has not physically connected with the main banking house, by a passageway, either tunnel or pneumatic tube, and these banking institutions have uniformly and throughout the years adhered to this department practice pursuant to the Constitution and statutes.

Both H. B. 566 and S. B. 409 have eliminated from the concept and definition of "banking house" the physical connection aspect of the statute, as it now exists, and authorize a banking house to be connected only by closed circuit television or other similar means of communication.

If this office were to hold that a "banking house" could be authorized to extend its place of business 500 feet or 1, 850 feet from its main banking

house, connected only by closed circuit television or other similar means of communication, then we would have to conclude that this manner of connection between the main banking house and its drive-in windows, or office facilities, irrespective of the distance, would be compatible with the constitutional provisions. We cannot so conclude as a matter of law, because the Bills fail to provide sufficient factors and guidelines to support that conclusion.

If these Bills were enacted into law, we would be required to give effect to the well settled rule of construction that, "an act of the Legislature is not to be declared unconstitutional unless plainly so. The presumption is that the Legislature acted in the light of the Constitution, with the intention to observe it rather than violate it." Maud v. Terrell, 109 Tex. 97, 200 S. W. 375, 376. Likewise, it was held in Watts v. Mann, 187 S. W. 2d 917 (Tex. Civ. App. 1945, error ref.) that ". . . in no doubtful case will the judiciary pronounce a legislative act to be contrary to the constitution . . ."

> "Constitutional provisions may be read into a statute . . .
> to remove uncertainties and in order to restrict literalism
> to proper bonds." 53 Tex. Jur. 2d 170, Statutes, Sec. 119.

We are thus required to harmonize the proposed statutes with the Constitution and to uphold their validity if there is any reasonable basis or ground to do so. 53 Tex. Jur. 2d 225, Statutes, Sec. 158. We must conclude that the constitutional concept and language that a bank shall not "engage in business at more than one place" is subject to construction. The Constitution should be given a liberal construction to carry out its purpose and intent. 12 Tex. Jur. 2d 364, Constitutional Law, Sec. 16. Great weight will be given to the legislative construction. 123 Tex. Jur. 2d 366, Sec. 20. No limitation as to the size of the place or area is set out, and the Legislature may thus interpret its meaning, subject to the ultimate determination of a court.

In a given case, under the particular facts and circumstances developed, the proposed Bills might conceivably be applied and harmonized with the Constitution and not be held to be unconstitutional, whereas, in a different case, under a quite dissimilar factual setting the Bills could not be constitutionally upheld and could be declared unconstitutional in authorizing office facilities and the engaging of business in two different places in a city and connected only by closed circuit television or other similar means of communication.

A court will look to substance and disregard form in each case in determining and applying the issues before it.  A legislative declaration is without the magical quality to transform into "one place" that which in fact is not.  Yet, we cannot say that the provision for a physically-connected facility within 1,850 feet of the central building is plainly unconstitutional on its face; nor can we say that the provision for two facilities separated by a short distance and operated as one integral business unit, although connected by a closed-circuit television, is plainly unconstitutional on its face.

We have searched the authorities in vain to discover some substantial legal guidelines which might serve to give a simple "yes" or "no" answer to the meaning and extent of "one place" in the construction and application of our Constitution and the proposed statutes.  Unfortunately, such matters will necessarily have to be tried in a court of law and finally passed upon by our Supreme Court before we can write with any certainty on these matters.  Since under the constitutional provision, which is self-enacting, the question of "one place" is constitutionally a mixed question of law and fact, any ultimate finding of "one place" under the Constitution must take into account all of the relevant facts and circumstances pertaining to the doing of the banking business at "one place."

The long standing policy of this office prohibits our passing upon any hypothetical questions or any mixed questions of law and fact which might conceivably arise in applying the proposed statutes to any given state of facts.  Attorney General Letter Opinion W.W. March 9, 1959; Attorney General Opinions Nos. M-195 (1968) and M-307 (1968.)  Since the constitutionality of the location of such  facilities must depend or turn upon the particular facts of each case, we are unable to render a simple "yes" or "no" answer to the questions propounded.

Among the factors to which a court will give consideration in determining whether the doing of the banking business is at the main banking house or place of business are (1) unity of operation, as to customer convenience and maintenance of its competitive position; (2) physical connection or lack of and the presence or absence of a pneumatic tube, tunnel or other passageway or connection between structures; (3) distance separating the main banking house and the "drive-in facility;" (4) number of intervening structures; (5) economic effect of the "drive-in facility" on the balance of competition between the competing banks.  All of these factors will be considered and none will be conclusive or controlling.  Jackson v. First National Bank of Valdosta, 246

F. Supp. 134, 139-140 (M. D. Ga. 1965, rev. on other ground, 344 F. 2d 71);
State v. First Nat. Bank of St. Louis, 249 S. W. 619, 621 (Mo. Sup. 1923.)

## SUMMARY

Proposed House Bill No. 566 and Senate Bill No. 409, 62nd Legislature, Regular Session, 1971, purporting to expand the area or place of location of banks and the operation of their drive-in facilities, may or may not be upheld as constitutional by a court, depending upon the facts and circumstances in a given case and the various factors to be considered by a court in determining whether the bank is doing business in "one place" in a city or town as contemplated by Article XVI, Section 16, Constitution of Texas. The constitutionality of the location of such facilities must depend upon the peculiar facts of each case and involve a hypothetical mixed question of law and fact, which this office has no authority to resolve.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Kerns Taylor
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

W. E. Allen, Acting Chairman

Houghton Brownlee
James Quick
James Broadhurst
V. F. Taylor
Max Hamilton

NOLA WHITE
First Assistant

ALFRED WALKER
Executive Assistant

MEADE F. GRIFFIN
Staff Legal Assistant