[No. 9175.   Department One.   April 21, 1911.]

SPOKANE & EASTERN TRUST COMPANY, *Appellant* v.
ANDREW M. I. HUFF, *Respondent*.[1]

BANKS AND BANKING—CHECKS—PAYMENT—MISTAKE. Where a bank paid a check drawn upon it under the mistaken belief that the drawer had funds there subject to check, it cannot recover the payment from the payee, since that would destroy the certainty pertaining to such transactions; and it is immaterial that the mistake was due to the confusion incident to paying the check after banking hours, as an accommodation, when the drawer's deposits had been withdrawn the same day.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 14, 1910, upon sustaining a demurrer to the complaint, dismissing an action to recover money paid on a check by mistake. Affirmed.

*Warren W. Tolman*, for appellant.

*Danson & Williams*, for respondent.

FULLERTON, J.—The appellant is a banking corporation, and receives money on deposit subject to check by its depositors. On the morning of October 6, 1909, one Edwin J. Schloss had on deposit in the appellant's bank subject to check the sum of $297, and one Leon J. Schloss had on deposit therein subject to check the sum of $48. During the banking hours of that day the Schlosses severally withdrew their respective deposits. On the same day, and about one hour after the bank had closed its doors to the general public, the respondent, Andrew M. I. Huff, appeared at the bank with the check of Edwin J. Schloss for the sum of $297, and the check of Leon J. Schloss for the sum of $48, both dated upon that day, and presented the checks to the bank's assistant secretary for payment. The assistant secretary thereupon caused inquiry to be made of the book-

[1]Reported in 115 Pac. 80.

8—63 WASH.

keeper and the paying teller of the bank to ascertain whether the drawers of the checks had sufficient funds on hand to meet the checks, and on being informed that they had, paid the checks to the respondent. When the books of the bank were balanced for the day, the overpayment was discovered, and on the next day the checks were tendered the respondent and repayment of the sums demanded. Repayment was refused, whereupon the present action was brought to recover the amount so paid.

In the complaint, in addition to the foregoing facts, it was alleged that, at the time of the payment, the bank had ceased for that day the transaction of business with the public, a fact that the respondent well knew; that it paid the money after business hours as an accommodation to the holder of the checks; that the reason it did not discover that the depositors drawing the checks had withdrawn their funds was owing to the confusion incidental to the closing of the business of the bank for the day; and that the respondent "did not by reason of said payment so change his position that he would be prejudiced by repayment of the money so paid to him." To the complaint a demurrer was interposed, which the court sustained. Later on a judgment of dismissal was entered, and the appeal followed.

It is a general rule, sustained by almost universal authority, that a payment, in the ordinary course of business, of a check by a bank upon which it is drawn, under the mistaken belief that the drawer has funds in the bank subject to check, is not such a payment under mistake of fact as will permit the bank to recover the money so paid.

In *Hull v. Bank of South Carolina*, Dudley (S. C.), 259, the court, passing upon the question, used this language:

"This question is to be decided rather by authority than general reasoning on the subject. No part of a commercial community is more interested in commercial usages than banks, and they cannot complain when they are required to strictly conform to them. They cannot always guard against fraud and imposition, but they may against mistakes, de-

pending on an inspection of their own books and accounts. Mistakes may be prevented which cannot be remedied. They accepted and paid the check presented by the defendant, for and on account of Hopton the drawer, whose money they had kept for his convenience and accommodation. The privity of contract was between them and their customer Hopton, and not between them and one who may have happened in the course of dealing to present a check drawn by Hopton. . . . A bank check has all the characteristics of bills of exchange, and cannot be distinguished from them. Indeed they perform not only all the offices of bills, but are more generally used for the transfer and payment of moneys. They are mercantile agents which should not be crippled in their daily and hourly operations. Before one reaches the bank after it has been drawn, it may have paid and discharged many debts, and after it has been accepted and paid, all the intervening holders in general are discharged from all liabilities to the bank; it becomes then a transaction between the bank and the drawer, the bank not infrequently paying money on checks of the drawer, when in fact he has no deposit."

In *First Nat. Bank of Detroit v. Burkham*, 32 Mich. 328, Judge Cooley, writing for the court, used these words:

"But we think it would be an exceedingly unsafe doctrine in commercial law, that one who has discounted a bill in good faith, and received in its payment the strongest possible assurance that it was drawn with proper authority, should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. The beauty and value of the rules governing commercial paper consist in their perfect certainty and reliability; they would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper."

So in *Oddie v. National City Bank of New York*, 45 N. Y. 735, 60 Am. Rep. 160, Church, Ch. J., discussing the question, said:

"When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any

other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt v. Foote* (9 N. Y. 463), but if it accepts such a check and pays it, either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine. In the case of a deposit, the bank becomes at once the debtor of the depositor, and the title of the deposit passes to the bank. The bank always has the means of knowing the state of the account of the drawer, and if it elects to pay the paper, it voluntarily takes upon itself the risk of securing it out of the drawer's account or otherwise."

In *Manufacturers' Nat. Bank of Baltimore v. Swift*, 70 Md. 515, 17 Atl. 336, 14 Am. St. 381, it was said:

"It is the duty of a bank to know the state of its depositor's account, and if it makes a mistake in this respect it must abide the consequences. The presentation of a check is a demand for payment; if it is paid, all the rights of the payee have been satisfied, and he is not entitled to ask any questions. It would forever destroy the character of a bank in all commercial circles, if when it was ready and willing to pay a check, it permitted the holder to enquire if the drawer had funds there to meet it. It is a matter with which he has no concern. In the absence of fraud on the part of the holder, the payment of a check by a bank is regarded as a finality. And the fact that the drawer had no funds on deposit will not give the bank any remedy against the holder."

In *National Bank of New Jersey v. Berrall*, 70 N. J. L. 757, 58 Atl. 189, 103 Am. St. 821, 66 L. R. A. 599, it was said:

"As between the holder of a check and the bank upon which it is drawn, the latter is bound to know the state of the depositor's account. Before paying the check it must take into consideration whether it was drawn against funds and whether the order for payment, evidenced by the check, has subsequently been revoked. Therefore, where a bank receives in the ordinary course of business a check, drawn upon it and presented by a *bona fide* holder, who is without notice of any infirmity therein, and the bank pays the amount of the check to such holder, it finally exercises its option to pay or

not to pay, and the transaction is closed as between the parties to the payment."

See, also, *Citizens' Bank of Norfolk v. Schwarzschild & Sultzberger Co.*, 109 Va. 539, 64 S. E. 954, 23 L. R. A. (N. S.) 1092; *Boylston Nat. Bank v. Richardson*, 101 Mass. 287; *Riverside Bank v. First Nat. Bank of Shenandoah*, 74 Fed. 276; *National Bank v. Burkhardt*, 100 U. S. 686; *City Nat. Bank of Selma v. Burns*, 68 Ala. 267, 44 Am. Rep. 138; *National Gold Bank & Trust Co. v. McDonald*, 51 Cal. 64, 21 Am. Rep. 697; *Consolidated Nat. Bank of New York v. First Nat. Bank of Middletown*, 129 App. Div. 538, 114 N. Y. Supp. 308; Morse, Banks and Banking (4th ed.), § 455.

But while the courts are uniform in holding that a bank cannot recover under the circumstances cited, they are not agreed upon the principle upon which the rule prohibiting a recovery rests. Some of them, it will be observed, put it on the ground of want of privity between the holder of the check and the bank; others upon the ground that the payment is not a payment by mistake within the meaning of the rule that permits a recovery; others, again, on the ground that to permit the bank to repudiate the payment would destroy the certainty that must pertain to commercial transactions of this sort if they are to remain useful to the business public. To our minds the latter reason is the most satisfactory. If, for example, a merchant conducting a retail business must hold the money he receives from the bank in payment of check and drafts, taken in by him from his customers in payment for the purchase of goods, until such reasonable time as the bank has to determine whether or not it will call upon him for a return of the money, it is manifest that he must discard the use of checks and drafts in the conduct of his business and require his customers to bring him cash. The uncertainty, delay, and annoyance such rule would cause him would forbid their use in his business.

Concluding, as we do, that the bank cannot recover if the checks in question were received and paid by it in the ordinary

course of business, it remains to inquire whether the special circumstances set out in the complaint relieve it from the rule. It is our opinion that they do not. The matters which are thought to relieve the bank of blame were of its own choosing. The holder of the checks in no way contributed to the mistake, and the fact that the bank officers were more liable to make a mistake at this particular time than some other, may prove the officers themselves more culpable, but it cannot change the effect of the mistake.

The judgment is affirmed.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.