**HUFFMAN v. FARMERS' NAT. BANK OF CROSS PLAINS et al. (No. 495.)**

Court of Civil Appeals of Texas. Eastland. Nov. 2, 1928.

Gib Callaway, of Brownwood, for appellant.

Paul Harrell, of Cross Plains, and Samuels, Foster, Brown & McGee and T. J. Renfro, all of Fort Worth, for appellees.

LESLIE, J. The plaintiff, W. G. Huffman, executed and delivered to B. F. Russell a check on the Farmers' National Bank of Cross Plains, Tex. It was payable to the order of said Russell and for the sum of $297.-50. Subsequent to its delivery, and prior to presentation for payment, it was countermanded by Huffman. The bank disregarded the countermand, and thereafter paid the check, which came to it in the due course of mail from the First State Bank at Baird, Tex., where it had been received as a deposit from said Russell, the payee, and credited to his account. In this suit the plaintiff seeks to recover the amount of the check from the Farmers' National Bank of Cross Plains, which cashed it and charged it to his account.

The bank interpleaded B. F. Russell, the payee and indorser of, the check, seeking a judgment against him for such amount as might be adjudged against it, and Russell, having applied the amount collected on the check to the payment of certain obligations alleged to be owing by Huffman, interpleaded the parties receiving those amounts, asking for a judgment against them for such portions received by them, in the event he was cast in judgment on the bank's plea.

The plaintiff, in his supplemental petition, urged a general demurrer, special exceptions, and misjoinder of parties in bringing Russell into the suit, as well as bringing into it the other parties against whom Russell asked for a judgment. The court overruled all of these exceptions and pleas, and the trial resulted in a judgment in favor of the defendant, Farmers' National Bank of Cross Plains, and the discharge of all of the other persons brought into the suit. The plaintiff preserved exceptions to the rulings of the court in the various respects, and assails the judgment as unsupported by the testimony. He has perfected his appeal, and asked that the judgment of the trial court be reversed and rendered upon the different assignments presented.

The testimony given upon the trial of the case, and especially that of Taylor Bond, the cashier of the defendant bank, clearly establishes that at the time the plaintiff, Huffman, gave the check in question on that bank, he had an account therein in excess of the amount of the check; that B. F. Russell, on receiving said check from the plaintiff, telephoned S. F. Bond, vice president of the bank, informing him that Huffman had given him the check, and inquiring if the bank would pay it, and was informed by said vice president that Huffman had an account in the bank, but that he did not know the amount thereof; that the cashier, when informed by the vice president that such a check had been drawn, made a pencil note of that fact on the ledger; that later on in the day the First State Bank at Baird called the cashier by long-distance telephone, inquiring of him if Huffman had sufficient money in the bank to pay the check, and was informed by the cashier that he did so have, whereupon the call by the Baird bank was noted by the cashier as a memorandum on the ledger sheet of the bank; that subsequent to said telephone conversations the plaintiff, through his attorney, instructed said cashier not to pay the check in controversy, and, if the bank did so, it would be held responsible for the money; that at the time of receiving this instruction the cashier stated to said Huffman, or his attorney, that he had already received two phone calls about the check, and that he had told them in both instances that Huffman had the money there to pay the check; that after this instruction from the plaintiff the cashier of the bank opened the mail, found the check in question,

and later in the day, and after said countermand, had the bank pay the check. This is a substantial statement of the foundation of this suit.

The Uniform Negotiable Instruments Act (Rev. St. 1925, arts. 5932–5948), which has been adopted in Texas, is decisive of this case, and adversely to the appellee bank. The following sections of that act are pertinent in the disposition of this appeal:

"Sec. 185. A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this Act applicable to a bill of exchange payable on demand apply to a check."

"Sec. 127. A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same same."

"Sec. 189. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

"Sec. 132. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

■ It is clear from the record, and especially the testimony of the defendant's cashier, Taylor Bond, that neither of the telephone conversations above detailed in said witness' testimony resulted in an acceptance of the check by the drawee bank. The acceptance must be in writing and signed by the drawee. Section 132, supra. This was not done. The oral statements over the telephone by the bank's official that Huffman had sufficient funds on deposit to pay the check created no liability against the bank. Particularly is this true, since section 189, supra, provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check. Ballen & Friedman v. Bank of Kremlin, 37 Okl. 112, 130 P. 539, 44 L. R. A. (N. S.) 621; Van Buskirk v. State Bank of Rocky Ford, 35 Colo. 142, 83 P. 778, 117 Am. St. Rep. 182.

■ It is the general rule that the drawer of an uncertified check can revoke his order for the payment of his funds, or in banking phraseology "stop payment," at any time before the bank's acceptance of the check, and the bank is bound by such revocation, and has no right to pay the check after notice thereof. Hewitt v. First National Bank of San Angelo, 113 Tex. 100, 252 S. W. 161; Odle v. Barnes et al. (Tex. Civ. App.) 2 S.W.(2d) 577; Brannan's Negotiable Instruments Law (Fourth Ed.) § 189; 7 C. J. § 429, p. 701.

[3] In fact, the bank is under no legal obligation to the holder of an unaccepted or uncertified check, and such a check will not support an action by the holder against the drawee bank. House v. Kountze et al., 17 Tex. Civ. App. 402, 43 S. W. 561 (writ of error denied); Central Bank & Trust Co. v. Davis (Tex. Civ. App.) 149 S. W. 290 (writ of error denied); Brannan, supra.

■ There being no obstacle preventing the drawer of the check from countermanding it at the time he did, it follows that, when that instrument, in the due course of business, reached the Farmers' National Bank of Cross Plains (defendant), that institution owed no duty or obligation to the holder of the check, and its payment of the same after the countermand was wrongful as to its depositor, and rendered it liable for the sum charged against plaintiff's account. First National Bank of Durant v. School District, 31 Okl. 139, 120 P. 614, 39 L. R. A. (N. S.) 655; Hewitt v. First National Bank, supra.

■ No reason can be perceived why the case should be returned to the trial court for further development as between the defendant bank and B. F. Russell, Hughes, and others brought into the case as aforesaid. Under the law there is nothing between them to be litigated or adjusted. B. F. Russell, payee in the check, when he sold the same to the First State Bank of Baird and indorsed it, engaged, among other things, that on due presentment the check would be "accepted or paid, or both, * * * according to its tenor." The check was presented by a bona fide holder in the due course of business to the defendant bank for payment. The drawee bank exercised its option to pay or not to pay, and paid the check. Before paying the check the bank was required to take into consideration whether it was drawn against funds on deposit, and whether the order for payment evidenced by the check had subsequently been revoked. It elected to pay the check, and the transaction is closed. When the check was paid, it became dead to the commercial world, mere evidence of a past transaction or indebtedness that had become extinguished by payment. The payment, under the circumstances, was purely a voluntary act on the part of the bank, and it cannot recover the funds so paid out from the original payee, Russell, or any one else. National Bank of New Jersey v. Berrall, 70 N. J. Law, 757, 58 A. 189, 66 L. R. A. 599, 103 Am. St. Rep. 821, 1 Ann. Cas. 630; National Bank of Rolla v. First State Bank of Salem, 141 Mo. App. 719, 125 S. W. 513; Brannan's N. I. L. § 189, supra.

The appellant's fifth proposition, under assignments 7, 8, and 10, is decisive of this case, and is sustained. For the reasons assigned, the judgment of the trial court as between plaintiff and defendant bank is reversed, and judgment is here rendered in favor of the plaintiff. In other respects, the judgment is undisturbed.