## AMERICAN NAT. BANK v. REED.
### No. 5079.

Court of Civil Appeals of Texas. Amarillo.

Nov. 13, 1939.

Rehearing Denied Dec. 18, 1939.

Adkins, Pipkin, Madden & Keffer and H. C. Pipkin, Jr., all of Amarillo, for appellant.

W. F. Nix, of Amarillo, for appellee.

FOLLEY, Justice.

The appellant, American National Bank, is a national banking corporation of Amarillo, Texas. The appellee, O. S. Reed, is engaged in the produce business in the same city and during the month of July, 1938 was a depositor of the appellant bank. On July 18, 1938 Gray Garner, who is in the produce business at Memphis, Texas, delivered to the appellee about sixty cases of eggs in Amarillo under an agreement previously made between these parties. Garner's daughter and another lady employed by Garner, at the request of appellee, candled some thirty-five or forty cases of these eggs in the establishment of the appellee at Amarillo on the day the eggs were delivered. The remainder of the eggs were not candled which was at the request of the appellee because he had already sold them to other buyers in Amarillo. From the eggs candled about five cases were found to be bad and were discarded from the lot. While such eggs were being candled an employee of the appellee was present in and about the room and, according to some of the testimony, assisted in the work. There was other testimony to the effect that the appellee himself was present a part of the time and exercised some supervision over the examination of the eggs during the candling process. At the conclusion of such process the appellee gave Garner a check for $279.89 for the eggs which had not been discarded. Such check was drawn on the appellant bank and payable to the order of Garner. There was evidence to the effect that on the next day and the day following the appellee discovered that some of the eggs for which he had given the check were in bad condition.

After the delivery of the eggs Garner returned to his home at Memphis and on the next day took the check to the First National Bank of Memphis and asked that such bank advance him the money on it. The vice president of the Memphis bank called the appellant bank by telephone and asked an employee of the latter bank if the check would be paid by it upon presentation. The employee of the Amarillo bank replied that such check would be paid. Thereupon the Memphis bank paid to Garner the face amount of the check in cash, less the amount of the telephone call. The check was forwarded through regular banking channels to the appellant for payment. On July 20, 1938, before the check reached the appellant bank the appellee instructed the appellant not to pay the check. Upon presentment of the check to the appellant such bank refused payment and stamped "Payment Stopped" on the face of the check. The check was thereupon returned to the Memphis bank unpaid. The vice president of the Memphis bank again called the appellant by telephone, reminded such bank of its previous assurance that the check would be paid upon presentment and insisted that the check be paid. Thereafter the Memphis bank, through its correspondent bank, again presented the check for payment. Upon this second presentment the appellant paid the check, charged the same against the account of the appellee and informed the latter of its action.

On July 25, 1938 the appellee filed this suit against the appellant in the County Court of Potter County, Texas, alleging that he had instructed the appellant not to pay the check but that notwithstanding such instruction the appellant had done so and had withdrawn from appellee's balance the sum of $279.89, the amount of the check. The appellee answered setting

up facts substantially as above stated, asked that Garner and the First National Bank of Memphis be impleaded and prayed for judgment over and against them for any recovery obtained against it by the appellee. By an amended answer in the nature of a cross-action, in which the appellant apparently abandoned any claims against Gray Garner and the First National Bank of Memphis, the appellant alleged that it had acquired by assignment from Garner whatever rights Garner held either under the check or the contract for the sale of the eggs; that the eggs involved in such contract were determined merchantable by test made under the supervision and in the presence of the appellee; that such eggs were delivered to the appellee upon the completion of the tests and were accepted by him as being sound and merchantable; that the appellee had sold some of the eggs and had received and retained value therefor; that if at a later time such eggs became unsound and unmerchantable such condition was occasioned through no fault of Garner but resulted entirely from the fact that such eggs were not handled by the appellee in such manner as was proper to preserve their merchantable condition; and asked that in the event it be held liable on the alleged wrongful payment of the check, that appellant have judgment against the appellee for the face amount of the check as an offset to any judgment rendered for the appellee. The appellee demurred to this cross-action plea of the appellant.

Trial was before a jury at the conclusion of which the court sustained the appellee's demurrer to appellant's cross-action, refused to allow the appellant to prove up its assignment from Garner and instructed a verdict for the appellee for the full amount of his claim. The court thereupon rendered judgment accordingly. The appellant reserved an exception to the court's action in sustaining a general demurrer to its cross-action and to the exclusion of the evidence in regard to the assignment from Garner to the bank. From this judgment this appeal is brought.

■ We think it is settled by the authorities of this State that the drawer of an uncertified check can revoke his order to pay such check out of his funds in the drawee bank at any time before the bank's acceptance of the check, and the bank is bound by such revocation and has no authority to pay the check after such notice. Hewitt v. First Nat. Bank of San Angelo, 113 Tex. 100, 252 S.W. 161. The fact that the appellant bank agreed orally over the telephone to pay the check upon presentment did not operate as an acceptance of the check since section 132 of article 5941, Vernon's Annotated Civil Statutes, requires that the acceptance must be in writing and signed by the drawee. "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Section 189 of article 5947, Vernon's Annotated Civil Statutes. Therefore the payment by the appellant bank after the countermand was wrongful and rendered it liable to the appellee for the sum charged against the latter's account. Hewitt v. First Nat. Bank of San Angelo, supra; Huffman v. Farmers' Nat. Bank of Cross Plains et al., Tex.Civ.App., 10 S.W.2d 753.

■ Regardless of the bank's liability to the appellee for its wrongful conduct in paying the check over appellee's protest, it is our opinion that under the facts of this case the appellant should have been allowed such offsets against appellee's claim as would have been available to Gray Garner in a suit between him and the appellee in the event the check had not been paid. By written agreement Garner transferred his contract for the sale of the eggs and all of his rights and claims arising under the contract or under the check given in the transaction. In this connection questions of fact were presented as to whether or not the appellee received all or a portion of the consideration for the check in question. It was admitted by the appellee that he sold some of the eggs and received value therefor. There was other testimony to the effect that all of the eggs for which the check was given were in a merchantable condition at the time they were delivered and that the appellee agreed to accept them as such, which, if true, would have presented an issue of estoppel in appellant's favor. There was also evidence which might reasonably have been interpreted by the jury that the appellee did not properly care for the eggs after their receipt by him and that his lack of diligence in this respect caused them to spoil after he ac-

cepted them in good condition. All these matters were questions of fact which might have been resolved against the appellee if the case had been submitted to the jury upon the issues presented by the pleadings and the testimony.

It appears to us that it would be highly unequitable under the facts of this case to allow the appellee full recovery upon the check when questions of fact were presented as to the receipt by the appellee of all or a portion of the consideration therefor, and then refuse to allow the appellant to recover for whatever equities existed in favor of Garner, especially since the appellant had obtained a written assignment of such rights. Such assignment, we think, brought forth the equitable doctrine of subrogation in appellant's favor in order for equity to do justice between the parties. In Galbraith-Foxworth Lumber Co. v. Long et al., Tex.Civ.App., 5 S.W.2d 162, 167, writ refused, it is said: "A court of equity, when it becomes necessary to do exact justice between parties in a given transaction, may place one of these parties, to whom a legal right does not belong, in the position of a party to whom the legal right does belong. This mode, adopted for the purpose of doing justice, is termed 'subrogation.'"

Again in Cason et al. v. Westfall et al., 83 Tex. 26, 18 S.W. 668, 669, 670, we find this general rule: "Subrogation may arise from the agreement of the parties, or by implication, in equity, to prevent fraud or injustice."

It is therefore our opinion that the court erred in excluding the testimony of the appellant with reference to its assignment from Garner and further erred in sustaining the demurrer to appellant's cross-action. Texas State Bank & Trust Co. et al. v. St. John, Tex.Civ.App., 103 S.W.2d 1104, writ dismissed; Usher v. Tucker Company, 217 Mass. 441, 105 N.E. 360, L.R.A.1916F, 826. Having so held it follows that the court erred in instructing a verdict for the appellee and rendering judgment for him upon the check without submitting to the jury the claims and equities of the appellant by virtue of its cross-action.

The judgment of the trial court is reversed and the cause remanded.