Charlie BRYAN, Petitioner,

v.

The CITIZENS NATIONAL BANK IN
ABILENE, Respondent.

No. C–789.

Supreme Court of Texas.

Feb. 24, 1982.

Rehearing Denied March 24, 1982.

Scarborough, Black, Tarpley & Scarborough, Charles L. Black, Abilene, for petitioner.

Wagstaff, Harrell, Alvis, Batjer, Stubbeman & Seamster, David G. Stubbeman, Abilene, for respondent.

GREENHILL, Chief Justice.

This is a suit initiated by the Citizens National Bank in Abilene (hereinafter "Citizens") against Charlie Bryan to recover funds paid by Citizens over a stop payment order. The question before the court is whether Citizens proved a cause of action for restitution of funds paid by mistake. The trial court rendered judgment for Citizens. The court of appeals affirmed. 621 S.W.2d 813. We reverse the judgment of the courts below and remand the cause in the interest of justice for retrial.

Charlie Bryan sold a go-cart business to B & G Construction Co. on October 11, 1979. As part of the consideration for the go-carts, Bryan received a $10,000 check drawn by B & G on the Citizens National Bank in Abilene. The check was postdated to November 1, 1979. For reasons not apparent from the record, B & G issued a stop payment order on the check on October 18, 1979. Bryan did not know of the stop order and repeatedly attempted to obtain payment of the check from Citizens. Each time Bryan presented the check, he was told only that the account contained insufficient funds. However, on November 11, Bryan presented the check again, and Citizens' president approved payment. Citizens gave Bryan a cashier's check for $10,000 in payment of B & G's check, and Bryan deposited the cashier's check in another bank. Bryan used the funds from the cashier's

check for living expenses and as security for loans.

Citizens brought suit against Bryan to recover the funds paid on the B & G check. The bank alleged and proved only that it had paid the B & G check by mistake over a stop order. Neither party introduced evidence of any defense to the check from B & G to Bryan. The trial court, sitting without a jury, rendered judgment that Citizens recover $10,000 from Bryan.

The court of civil appeals affirmed. That court held that Citizens had proved a cause of action for restitution, and that the burden was upon Bryan to come forward with evidence that he was a holder in due course or had changed his position in reliance upon the payment so as to defeat a cause of action for restitution. In coming to this conclusion, that court relied upon three cases decided before the Uniform Commercial Code was enacted in Texas: *Capital National Bank in Austin v. Wootton*, 369 S.W.2d 475 (Tex.Civ.App.—Austin 1963, writ dism'd w. o. j.); *First-Wichita National Bank v. Steed*, 374 S.W.2d 932 (Tex.Civ. App.—Fort Worth 1964, no writ); and *Central National Bank of Houston v. Martin*, 396 S.W.2d 218 (Tex.Civ.App.—Houston 1965, writ dism'd w. o. j.). These cases hold that a bank pays out its own money when it pays over a stop order. A payee who retains these funds was held to be unjustly enriched unless he has changed his position in reliance on the payment.

Prior to enactment of the Code in Texas, the remedy of the bank where it paid over a stop order by mistake was not altogether clear. It was held by one court of civil appeals that the bank could not recover from the payee, nor could the bank debit its customer's account when it made such a mistake. *Huffman v. Farmer's Nat'l Bank of Cross Plains*, 10 S.W.2d 753 (Tex.Civ. App.—Eastland 1928, no writ). Other cases indicated the bank's remedy was equitable subrogation similar to that set out in

§ 4.407 of the Code.[1] *American Nat'l Bank v. Reed*, 134 S.W.2d 782 (Tex.Civ.App.—Amarillo 1939, writ dism'd); *Texas State Bank and Trust Co. v. St. John*, 103 S.W.2d 1104 (Tex.Civ.App.—El Paso 1937, writ dism'd). *Capital National Bank v. Wootton* and the other two cases relied upon by the court of civil appeals held that a bank which mistakenly paid over a stop order could recover in a common law suit in equity for restitution of funds paid by mistake. These three cases, along with the opinion of the court of civil appeals in the present case, appear to be the only decisions in any state which allow a bank to recover on the mere showing of mistaken payment and place the burden upon the payee to show he was a holder in due course. Annotation, 39 A.L.R. 1239 as supplemented.

Bryan contends that the Uniform Commercial Code has abolished any cause of action recognized by *Wootton* and the other cases relied upon by Citizens. He argues that § 4.407 of the Code provides the bank's sole remedy where it has paid a customer's check over a stop order. Under § 4.407, the bank recovers by stepping into the shoes of the party who was entitled to the funds represented by the check. Thus, if Citizens had brought a subrogation suit against Bryan under § 4.407 of the Code, it would have been required to assert in a suit for breach of contract whatever defenses the drawer, B & G Construction, might have had against Bryan. Bryan contends Citizens has not made such a showing and is therefore precluded from recovery.

 We hold that § 4.407 is not the bank's exclusive remedy. A bank may recover restitution for funds paid by mistake. However, the bank may recover restitution only to the extent that it alleges and proves that the drawer had a defense to the check. Since Citizens failed to make such a showing, the facts alleged and proved by Citizens do not support such a recovery.

1. Section 4.407 of the Texas Business and Commerce Code provides:

> If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights

> (1) of any holder in due course of the item against the drawer or maker; and
> (2) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out off which the item arose; and
> (3) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose.

■ Generally, a party who pays funds under a mistake of fact may recover restitution of those funds if the party to whom payment was made has not materially changed his position in reliance thereon. *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28 (5th Cir. 1963); *Singer v. St. Paul Mercury Ins. Co.*, 478 S.W.2d 579 (Tex. Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Hull v. Freedman*, 383 S.W.2d 236 (Tex. Civ.App.—Fort Worth 1964, writ ref'd n. r. e.). The purpose of such restitution is to prevent unconscionable loss to the party paying out the funds and unjust enrichment to the party receiving the payment. Restatement of Restitution § 1.

■ In the present case, Citizens has shown no unconscionable loss. A bank which mistakenly pays over a stop order can usually charge its customer's account. Under § 4.403 of the Code, the bank will not suffer a loss unless its customer proves he suffered a loss because of the payment.[2] Section 4.403 states: "The burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer." In order to prove a loss under the Code, a customer must prove he was not liable to the payee on the check. White & Summers, Uniform Commercial Code 560 (2d ed. 1980); Brady, Brady on Bank Checks § 20.20, p. 20–45 (5th ed. 1979); 6 Reitman & Weisblatt, Banking Law § 133.-07(2) (Bender's Banking Law Service 1981). Since Citizens has not shown that its customer, B & G Construction, was not liable on the check to Bryan, the bank has not shown that it suffered a loss.

■ The common law right of restitution as applied by the court of civil appeals also conflicts with § 3.307 of the Code. Payment to a holder in due course is final so as to cut off all rights to revoke that payment other than under the provisions of chapter 4 of the Code. Tex.Bus.Comm.Code § 3.418.[3] The court of civil appeals placed the burden upon Bryan to come forward with evidence that he was a holder in due course so as to defeat recovery by Citizens.[4] However, § 3.307 of the Code provides:

(b) When signatures are admitted or established, *production of the instrument entitles a holder to recover on it unless the defendant establishes some defense.*

(c) *After it is shown that a defense exists* a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course. (emphasis added)

A holder's status as a holder in due course is not at issue unless the opposing party introduces some evidence of a defense to the instrument. A holder is thus presumed a holder in due course until a defense is shown. *Favors v. Yaffee*, 605 S.W.2d 342 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n. r. e.); *Riley v. First State Bank, Spearman*, 469 S.W.2d 812 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.); *Couch v. Babb*, 423 S.W.2d 464 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.).[5] *See also Continental Nat'l Bank of Fort Worth v. Conner*, 147 Tex. 218, 214 S.W.2d 928 (1948) (similar holding prior to enactment of the U.C.C.). Bryan was the holder of a check which was valid upon its face;

2. There is evidence that Citizens knowingly paid B & G's check as an overdraft and thus may not be able to recover by simply debiting its customer's account. We·do not deem this fact relevant to Citizens' right to recover from Bryan. Where a bank voluntarily pays a check as an overdraft, it makes a loan to its customer. *See* Tex.Bus.Comm.Code § 4.401 and comments thereto. The bank must therefore look to its *customer* for repayment of the overdraft and not to restitution from the payee of the check. *Orlich v. Rubio Savings Bank*, 240 Iowa 1074, 1076, 38 N.W.2d 622 (1949); *Vandagrift v. Masonic Home*, 242 Mo. 138, 145 S.W. 448 (1912); *Spokane & Eastern Trust Co. v. Huff*, 63 Wash. 225, 115 P. 80 (1911); Brady on Bank Checks § 17.10; Reitman & Weisblatt, Banking Law § 125.06. Recovery from either the customer or the payee would be possible in a subrogation suit under § 4.407 of the Code. Tex.Bus.Comm.Code § 4.407(2) and (3).

3. Tex.Bus.Comm.Code § 3.418 provides:

Except for recovery of bank payments as provided in the chapter on Bank Deposits and Collections (Chapter 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.

4. Prior to the Code, Bryan could not have been a holder in due course because he was the payee of the check. *J. I. Case Threshing Machine Co. v. Howth*, 116 Tex. 434, 293 S.W. 800 (1927). The Code now expressly provides that a payee be a holder in due course, Tex.Bus. Comm.Code § 3.302.

5. The court of civil appeals attempted to distinguish these cases by noting that they were suits

therefore, he was entitled to payment absent a showing of defensive facts. Since Citizens raised no defense to the check from B & G, the bank failed to show that payment was not final or that Bryan was unjustly enriched.

Citizens contends that § 1.103 of the Code expressly preserves the right to restitution the bank asserted. That section states:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, *mistake*, bankruptcy, or other validating or invalidating cause shall supplement its provisions. (emphasis added)

The comments to sections 4.403 and 4.407 also indicate that a cause of action for recovery of funds paid by mistake supplements the remedies set out in the Code.[6] We agree that a common law right to restitution still exists. However, this right can only continue in a form that does not conflict with Code provisions. *See Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 330 (Tex.1978); *Pacific Products, Inc. v. Great Western Plywood, Ltd.*, 528 S.W.2d 286, 291 (Tex.Civ.App.—Fort Worth 1975, no writ). We have held that the right of restitution *as applied* in the cases relied upon by Citizens is inconsistent with sections 3.307, 3.418, and 4.403 of the Code. Therefore, to the extent they conflict with this opinion, *Capital National Bank v. Wootton* and the other civil appeals

decisions holding that a bank may recover restitution of funds paid over a stop order by mistake without showing a defense to the check are disapproved.

 A bank that mistakenly pays a check over a stop order has several remedies. The bank may simply charge the customer's account for the amount of the payment. If the customer claims against the bank for wrongful payment, then the bank may implead the payee under § 4.407 of the Code and assert against him any defenses which the customer asserts against the bank. Also, the bank may decide not to debit the customer's account and instead file suit against the payee of the check either for restitution or for recovery on the underlying contract as subrogee to the customer's rights. Under either theory, the bank may recover only to the extent it proves the drawer of the check was not liable to the payee.

The Texas law pertaining to the bank's right of recovery under these facts was not clear even before the Code. Moreover, we have disapproved the three most recent Texas decisions on this question because they conflict with the Code. We therefore remand this cause in the interest of justice for a new trial. *Scott v. Liebman*, 404 S.W.2d 288 (Tex.1966).

The judgment of the court of civil appeals is reversed and the cause remanded for a new trial.

---

by a holder to collect on an instrument. However, we see no reason why a holder of a negotiable instrument should enjoy a less favorable position as *defendant* in a suit by the bank to revoke payment than he would enjoy as *plaintiff* in a suit to recover on the instrument.

6. Comment 5 to Tex.Bus.Comm.Code § 4.407 states:

> The spelling out of the affirmative rights of the bank in this section does not destroy other existing rights (Section 1—103). Among others these may include the defense of a payor bank that by conduct in recognizing the payment a customer has ratified the bank's action in paying in disregard of a stop payment order or rights to recover money paid under a mistake.

Likewise, comment 8 to § 4.403 provides:

> A payment in violation of an effective direction to stop payment is an improper payment, even though it is made by mistake or inadvertence. Any agreement to the contrary is invalid under Section 4—103(1) if in paying the item over the stop payment order the bank has failed to exercise ordinary care. The drawee is, however, entitled to subrogation to prevent unjust enrichment (Section 4—407); retains common-law defenses, e.g., that by conduct in recognizing the payment the customer has ratified the bank's action in paying over a stop payment order (Section 1—103); and retains common-law rights, e.g., to recover money paid under a mistake (Section 1—103) *in cases where the payment is not made final by Section 3—418.* (emphasis added)