United States Court of Appeals,

Fifth Circuit.

No. 92-8258.

Roy McNAIR, Plaintiff-Appellee/Cross-Appellant,

v.

CITY OF CEDAR PARK, TEXAS, et al., Defendants,

City of Cedar Park, Texas, Defendant-Appellant/Cross-Appellee.

June 29, 1993.

Appeals from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

The City of Cedar Park, Texas, appeals an adverse verdict and judgment requiring it to refund approximately $650,000 to Roy McNair. McNair also appeals, seeking additional prejudgment interest and attorney's fees. For the reasons assigned, we reverse and render judgment in favor of the City and, concomitantly, reject McNair's appeal.

Background

Cedar Park is a small city about 30 miles northwest of Austin. During the mid-1980s it experienced rapid growth, requiring the purchase of the private system from which it previously had obtained its water. Because that system was operating at maximum capacity, Cedar Park determined that a major capital expansion was required to accommodate new development. In 1985, the City followed in the footsteps of other cities throughout Texas and enacted an ordinance imposing a community impact fee on all newcomers,[1] based on a calculation of the average cost of expansion per living unit. This fee, which computed to $2,400, was charged to all new development and was intended to offset the cost of systemic expansion. Upon receipt of the fees, the City obligated itself to provide water and sewer services.

---

[1] The City had a population of about 3,500 people and approximately 12,000 additional lots had been platted.

In March 1984, McNair paid $1,650,000 for approximately 100 acres of land in Cedar Park's jurisdiction on which he intended to construct an upscale trailer park accommodating 1,600 new residents. His plats of the tract were approved by the City Zoning Commission. This approval was revoked because McNair had failed to pay the community impact fee within the time allowed. He then secured an agreement from the City to subsequently recalculate the fee based on actual water use of the trailers. In the meantime, he paid the sum of $1.3 million based on the $2400 per unit fee for 542 units.

On March 2, 1987, having abandoned his plan to develop the trailer park, McNair demanded a complete refund of his fee, plus accrued interest.[2] By this time, Cedar Park was well into a five-year plan to construct a unified water system. About $2 million had been spent and the City had committed to spend an additional $8 million. The City was in the process of obtaining state regulatory permits to construct the planned waste-water treatment facilities.

McNair was never told that the fees would be refundable in whole or in part; the ordinance made no mention of refunds. He was the only developer who sought a refund, although others had abandoned their projects. Cedar Park remains obligated to provide water and sewer services to the McNair tract.

McNair sued the City in state court alleging unjust enrichment, assumpsit, and other theories. The case was removed to federal court when he added claims arising under federal law. The district court refused McNair's request to allow dismissal of the federal claims and thereafter a remand. With the exception of the assumpsit and unjust enrichment theories, all claims were disposed of under Fed.R.Civ.P. 56(c) and are not the subject of this appeal. The case proceeded to trial and a jury returned a verdict awarding McNair one-half of his fee; both Cedar Park and McNair timely appealed.

Analysis

The City preserved a sufficiency question by first moving for directed verdict at the close of

---

[2]McNair canceled the project because of the economic downturn in the region and because of serious disputes between himself and his business partner.

all the evidence and thereafter by moving for judgment notwithstanding the verdict.[3] The appellate standard of review of the insufficiency claim is the same as that applicable to the granting of a motion for directed verdict or judgment notwithstanding the verdict.[4] When determining whether a party is entitled to judgment as a matter of law, whether the motion comes before, during, or after the trial, the court must consult "the applicable substantive law to ascertain what factual issues are material."[5] The court must then review the evidence bearing on those issues, drawing all inferences in favor of the nonmovant/appellee, to determine whether a reasonable juror could arrive at a verdict in his favor.[6]

McNair's recovery is based on assumpsit, an implied-in-law or quasi-contract. While Texas has not adopted the English common-law forms of action, it did adopt the common law of England insofar as it comported with its constitution and statutory enactments.[7] Texas recognizes a cause of action in contract based on implied-in-law obligations. While the old common-law writ of assumpsit—literally "he promised"—was a convenient means of enforcing implied obligations in the common-law, rather than the equity, courts of England, the form of the action is no longer of serious moment.[8] We therefore pretermit the procedural niceties and focus on that which is necessary to sustain recovery as specifically alleged herein—money had and received[9] and restitution.[10]

Both theories are equitable and have at their base an implied-in-law contractual obligation

[3]*See* Fed.R.Civ.P. 50; *McCann v. Texas City Refining, Inc.,* 984 F.2d 667 (5th Cir.1993).

[4]*Spuler v. Pickar,* 958 F.2d 103 (5th Cir.1992).

[5]*King v. Chide,* 974 F.2d 653, 656 (5th Cir.1992).

[6]*Spuler; King.*

[7]*Knebel v. Capital Nat'l Bank of Austin,* 505 S.W.2d 628 (Tex.Civ.App.—Austin), *aff'd in part and vacated and remanded in part,* 518 S.W.2d 795 (Tex.1974).

[8]1 *Corbin on Contracts* § 17, at 38-39 (1963).

[9]For a description of this equitable cause of action see *Staats v. Miller,* 150 Tex. 581, 582, 243 S.W.2d 686, 687 (1951). *See generally* 42 C.J.S. *Implied Contracts* §§ 11-23 (1991).

[10]*See Restatement of Restitution* § 5(b) ("The appropriate proceeding in action at law for the payment of money by way of restitution is[,] ... in States distinguishing actions of contract from actions of tort, an action of contract.").

to restore unjust enrichment.[11]  Thus, McNair had to establish that the City should be treated[12] as having promised to return his payment, or some portion thereof, notwithstanding the absence of express contractual assent thereto.  Before we may decide if there was a quasi-contractual basis for a refund, we must first consider whether a contractual obligation, implied or otherwise, existed.

Considering the regulatory aspects of this transaction, we are not wont to recognize contractual duties as a matter of course.  A municipality obviously has the capacity to form binding contracts for a wide variety of purposes.  At the same time, however, a municipality also has broader obligations towards its citizenry, arising from its routine taxation and expenditures schema, which cannot be regarded as anything but the ordinary course of government.  Hence, a citizen cannot deem his payment of taxes to constitute consideration for clean streets and effective police services authorizing a suit in contract to enforce the providing of same.

Viewed closely, it is readily apparent that Cedar Park's dealings with McNair were qualitatively different.  McNair proposed to bring 1,600 new residents into a city of 3,500.  Assisted by able counsel, McNair negotiated with the City before paying the impact fee and in fact secured, in advance, an agreement to recalculate that fee based on actual usage subsequently experienced.  The relationship between McNair and the City was not that of a citizen personally seeking routine public service.  Rather, McNair and the City dealt at arm's length, in a business transaction, each cognizant of his or its own particular interests.  It is appropriate, therefore, to treat the resulting obligations as an enforceable quasi-contract.[13]  That said, we must consider the parameters of that contract.

---

[11]"In order to warrant a recovery in an action of assumpsit for money paid out and expended, it devolved upon appellants to plead and prove facts and circumstances from which a quasi-contractual obligation to repay may be implied." *Fun Time Centers, Inc. v. Continental Nat'l Bank,* 517 S.W.2d 877, 884 (Tex.Civ.App.—Tyler 1974, *writ ref'd n.r.e.*).  *See also La Chance v. Hollenbeck,* 695 S.W.2d 618 (Tex.App.—Austin 1985, *writ ref'd n.r.e.*) (describing implied contractual basis for restitution).

[12]Our analysis is limited.  We do not here construe the terms of an express or implied-in-fact agreement.  Rather, we consider whether in fairness the City and McNair should be treated as though they each agreed to assume some duty to the other and, assuming as much, the scope of those duties.

[13]*Harker Heights v. Sun Meadows Land, Ltd.,* 830 S.W.2d 313 (Tex.App.—Austin 1992) (discussing restitutionary remedy premised on an implied contract between city and developers).

The ordinance clearly provides that any citizen seeking to build a new home in the City would have to pay, in advance, a pro-rata share of the costs of the providing of additional water and sewerage capacity. These costs reflect, of necessity, an economy of scale. The City could not bend and shape its plans according to the whim of each new resident. The reality of municipal management is that long-term systemic costs and growth projections[14] must be taken into consideration, determined, and pursued. Individual plans allow for more flexibility. The ordinance made no mention of refunds in the event the developer simply changed his mind. The City made long-term plans with the understanding that it would be obligated to provide additional water and sewerage service to McNair, his successors in interest, and everyone else who paid the impact fee.[15]

While the potential scope of obligations created in equity is as broad as notions of fairness

---

[14]In fact, the City's projections were not merely based on the possibility that land like McNair's could be developed, which would be substantial in itself. McNair's predecessor in title specifically requested waste-water capacity for 750 living units. The city engineer confirmed the capacity and after McNair acquired that tract, was told by McNair to reserve flow capacity for those units.

[15]Tex.Loc.Gov't Code Ann. § 395.020 (Vernon Supp.1993) provides:

> Any new development for which an impact fee has been paid is entitled to the permanent use and benefit of the services for which the fee was exacted and is entitled to receive immediate service from any existing facilities with actual capacity to serve the new service units, subject to compliance with other valid regulations.

McNair's argument that the City's failure to complete extension of improvements of his tract, notwithstanding his suit essentially demanding rescission and seeking refund of payment, is disingenuous. *Bernal v. Garrison,* 818 S.W.2d 79, 83 (Tex.App.—Corpus Christi 1991, *no writ* ) ("A fundamental rule of contract law is that whenever a party to a contract repudiates ... the other party ... is excused from further performance."). McNair concedes the fact that the City could provide water within 30 to 60 days. Texas law has long rejected the result McNair seeks with this argument:

> After all, the underlying principle, running through the cases is this and nothing more, that the action for money had and received upon a failure of consideration, partial and complete, is to be ruled by broad considerations of equity and justice, and that the plaintiff may not prevail if he fails to satisfy the court that what the defendant has received should in conscience be returned.

*Ennis v. Interstate Distr., Inc.,* 598 S.W.2d 903, 907 (Tex.Civ.App.—Dallas 1980) (citing 12 *Williston on Contracts* § 1457 (3d ed. 1970)).

McNair's request for a refund does not otherwise fit within the pertinent statutory provision. Tex.Loc.Gov't Code Ann. § 395.025 (Vernon Supp.1993) (providing for refund where municipality fails to provide service).

allow,[16] the duty to refund the impact fee may only arise in circumstances recognized under controlling law. In Texas the notion of restitution does not permit the rescission of a contract and return of the value received in the absence of "fraud, duress, or the taking of undue advantage."[17] Likewise, Texas does not require repayment of money had and received unless equity and good conscience demand it.[18] We perceive no basis for finding the City's retention of McNair's payment unfair. The City has provided what it promised. The money paid did not, therefore, result in an unjust enrichment of Cedar Park.

The City's retention of the fee is fundamentally fair when one considers that McNair received exactly what he bargained for. He has paid his share of the systemic water and sewer expansion costs and cannot be asked to pay same again. His tract of land is entitled to those city services. At the same time, the City has incurred a substantial corresponding expense and obligation.[19] Equity and the controlling law demand that the agreement between the City and McNair be honored. Nothing more; nothing less.

The judgment against Cedar Park is REVERSED and judgment in favor of Cedar Park rejecting McNair's demands is RENDERED. Consistent therewith, McNair's assignments of error

---

[16]1 *Williston on Contracts* § 1:6, at 26 (4th ed. 1990).

[17]*Heldenfels Bros., Inc. v. Corpus Christi,* 832 S.W.2d 39 (Tex.1992).

[18]The parties devote much of their attention to the effect of the *Heldenfels* court's definition of "unjust enrichment." The City contends that because unjust enrichment is a necessary component for a quasi-contractual recovery, such as money had and received, the definition of unjust enrichment in *Heldenfels* controls and, accordingly, requires the showing of a wrongful act by the City. McNair points to earlier cases dealing with a factual setting more akin to that involved herein and addressing specifically a "money had and received theory." In those cases the courts stressed that the controlling question is somewhat broader: whether equity and good conscience require repayment. *E.g., Barrett v. Ferrell,* 550 S.W.2d 138 (Tex.Civ.App.—Tyler 1977, *writ ref'd n.r.e.*) ("An action for restitution based on ... money had and received will lie where one person has obtained money ... [wrongfully] or when money is paid by one person in consideration of an act to be done by another and the act is not performed.") Because there is no evidence of wrongdoing or failure of consideration on the part of the City, or of any other circumstance demanding repayment, we would reach the same result regardless of whether a wrongful act were required. Accordingly, we need not resolve any conflict, real or imagined, between these cases.

[19]Restitution is not available where the defendant materially changes his position in reliance. *Bryan v. Citizens Nat'l Bank,* 628 S.W.2d 761 (Tex.1982). Likewise, the plaintiff may not claim restitution where he has not incurred a loss. *Id. Cf. Harker Heights* (city failed to annex as it impliedly agreed to do).

in his appeal are rejected as moot.