**GUARANTY BANK & TRUST,**
Plaintiff–Respondent,

v.

**Lawrence Lee SMITH and L.B. Smith Co., Inc., Defendants–Appellants.**

No. 21364.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1997.

Douglas R. Nickell & Greg W. Pearman, Miller & Sanford, P.C., Springfield, for Appellant.

J. Donald Lysaught, Jr., Joplin, Mustain, Higgins, Kolich, Lysaught & Tomasic, Chartered for Respondent.

BARNEY, Judge.

This action was brought by Guaranty Bank & Trust (Plaintiff bank) against Lawrence Lee Smith (Defendant Smith) and L.B. Smith Co., Inc. (Defendant L.B. Smith Company), to recover funds paid to L.B. Smith Company contrary to a stop-payment order. The trial court granted summary judgment to Plaintiff bank against both Defendants in the sum of $18,198.00 (the amount of the check), plus interest and costs. Defendants appeal.

On December 4, 1995, Defendant L.B. Smith Company received a check from Merit Construction Company, Inc. (Merit) in the sum of $18,198.00 as payment for work performed by Defendant L.B. Smith Company. The check issued to Defendant L.B. Smith Company by Merit was drawn on Merit's business bank account with Plaintiff bank. Defendant L.B. Smith Company deposited Merit's check in Defendant L.B. Smith Company's bank account on December 5, 1995.

The next day, December 6, 1995, Merit placed a "stoppayment" order on the check it issued to Defendants because of an error in the computation of the amount owed. Merit immediately notified Defendant L.B. Smith Company that it had issued a stoppayment order on the check and offered Defendant L.B. Smith Company a replacement check.

On December 15, 1995, Defendant Smith traveled to Kansas City, Kansas, to receive a replacement check from Merit in the sum of $18,171.75, drawn on the same account as the original check. Defendant Smith endorsed the new check and in turn received a cashier's check. This cashier's check was then deposited in Defendant L.B. Smith Company's bank account with another bank.

However, Plaintiff bank failed to promptly stop payment on the first check issued to Defendant L.B. Smith Company from Merit. Consequently, Plaintiff bank made payment to Defendant L.B. Smith Company on both checks issued from Merit, together totaling $36,369.75.

Plaintiff bank demanded that Defendant L.B. Smith Company reimburse it for the payment it made to Defendant L.B. Smith Company on the first check, i.e., $18,198.00. Defendant L.B. Smith Company refused, claiming that Merit owed it additional money as represented by the first check, and thus it maintained that it was entitled to keep the money. Plaintiff bank filed suit for restitution and unjust enrichment.[1] The trial court granted Plaintiff bank's motion for summary judgment against both Defendants.

Defendants appeal, assigning two points of trial court error. First, Defendants aver that section 400.4–407 (Uniform Commercial Code) supplanted the common law remedies of unjust enrichment and restitution.[2] Defendants maintain that under section 400.4–407 Plaintiff bank was subrogated to the rights of Merit and that Plaintiff bank failed to prove that Merit had a defense to payment of the check at issue. Thus, Defendants contend, the trial court erred in granting Plaintiff bank summary judgment. Second, Defendant maintains that it was trial court error to grant judgment against Defendant Lawrence Lee Smith, individually, because he was acting in his capacity as president for Defendant L.B. Smith Company when the check at issue was endorsed and deposited.

I.

When considering appeals from summary judgments, appellate courts will review the record *de novo* in the light most favorable to the party against whom judgment was entered. *Premium Std. Farms, Inc. v. Lincoln Township,* 946 S.W.2d 234, 236–37 (Mo. banc 1997); *Nall v. Highway & Transp. Employees' & Hwy. Patrol Ret. Sys.,* 943 S.W.2d 708, 710 (Mo.App.1997). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the

---

**1.** Plaintiff bank did not charge Merit's bank account for the check that was paid contrary to Merit's stop-payment order.

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

motion initially." *Rice v. Hodapp,* 919 S.W.2d 240, 243 (Mo. banc 1996). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Nall,* 943 S.W.2d at 710. "Genuine" implies that the issue, or dispute, must be a real and substantial one, not merely consisting of conjecture, theory, and possibilities. *Rice,* 919 S.W.2d at 243. Facts asserted in affidavits or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Nall,* 943 S.W.2d at 710.

## II.

In Defendants' first point, they assign error to the trial court in granting summary judgment to Plaintiff bank because Defendants maintain that section 400.4–407 precluded the Plaintiff bank's recovery of damages under the common law theories of restitution and unjust enrichment. Defendants maintain that this is because the Plaintiff bank failed to establish that Merit had a defense to the payment on the check at issue. *See* § 400.4–407(3).

■ In our review of Defendants' first point, we note that section 400.4–407 provides the following:

If a payor bank has paid an item over the order of the drawer or maker to stop payment, or after an account has been closed, or otherwise under circumstances giving a basis for objection by the drawer or maker, *to prevent unjust enrichment* and to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank is subrogated to the rights

(1) of any holder in due course on the item against the drawer or maker;

(2) of the payee or any other holder of the item against the drawer or maker either on the item or under transaction out of which the item arose; and

(3) *of the drawer or maker against the payee* or any other holder of the item with respect to the transaction out of which the item arose.

§ 400.4–407 (emphasis added). Additionally, "subrogation," as used in section 400.4–407, is defined as the substitution of one party in the place of another with reference to a lawful claim or right. *Estate of Griffitts,* 938 S.W.2d 621, 624 (Mo.App.1997).

■ Therefore, under sub-section 400.4–407(3), in order to achieve subrogation, the subrogor (Merit) must have some existing right or legal claim that can be subrogated to fulfill the claim of the subrogee (Plaintiff bank).

Our attention has not been called to nor has our independent research revealed a Missouri case on point. Defendants rely on *Bryan v. Citizens Nat'l Bank in Abilene,* 628 S.W.2d 761 (Tex.1982) as authority for the proposition that section 400.4–407 of the Uniform Commercial Code displaced the common law theories of restitution and unjust enrichment in the case at bar.[3]

In *Bryan,* Defendant Charlie Bryan received a check from B & G Construction Company in the sum of $10,000 as payment for a business Defendant Charlie Bryan sold B & G Construction Company. *Id.* at 761. Thereafter, B & G Construction Company placed a stop-payment order on the check; however, Plaintiff Citizens National Bank paid the check over the stop payment order. *Id.* The bank then sued Defendant Charlie Bryan under the common law theory of restitution to recover the funds it paid contrary to its customer's stop-payment order. At trial, neither party introduced evidence of any defense to payment of the check that B & G Construction Company may have had against Defendant Charlie Bryan. *Id.* at 762. Nonetheless, the trial court rendered judgment in favor of Citizens National Bank, and a court of appeals affirmed. *Id.*

The Texas Supreme Court reversed, holding that under the provisions of [section 400.4–407], a "bank recovers by stepping into the shoes of the party who was entitled to the funds represented by the check." *Bryan,* 628 S.W.2d at 762. Thus, the court

---

**3.** Section 4–407 of the Uniform Commercial Code was adopted verbatim in Missouri and Texas. *See* § 400.4–407, RSMo 1994; Tex. Bus. & Com.Code Ann. § 4.407 (West 1994).

commented, if Citizens National Bank had brought its suit against Defendant Charlie Bryan, under [section 400.4–407] it would have been required to assert whatever defenses to payment of the check the drawer, B & G Construction Company, may have had against Defendant Charlie Bryan. *Id.*

The Texas Supreme Court held that the common law right of restitution is available as a remedy to the extent that it does not conflict with the Uniform Commercial Code provisions. *Id.* at 764. Thus, a bank may recover under the common law theory of restitution, but only to the extent that it alleges and proves that the maker had a defense to the payment of the check as required by section 400.4–407. *Id.* The court then held that Citizen National Bank failed to prove that B & G Construction Company had a defense to the payment of the check.[4] *Id.*

■ We agree with the Texas Supreme Court in its holding that a bank may recover under either the common law theory of restitution or section 400.4–407 to the extent that a maker of a check has a defense to payment to a payee who received the funds over a stop-payment order.[5] *See Bryan*, 628 S.W.2d at 764; *see also* 9 C.J.S. *Banks & Banking* §§ 362–363 (1996). The common law theory of restitution may not be used, however, to circumvent the provisions of the Uniform Commercial Code. *See Bryan*, 628 S.W.2d at 764.

■ In the instant matter, Plaintiff bank may recover from Defendant L.B. Smith Company only to the extent that it alleges and proves that Merit was not liable to Defendant L.B. Smith Company "with respect to the transaction out of which the [check] arose." *See id.* at 763–764; *see also* § 400.4–407(3). Based on the record before us, however, we cannot make a determination as to what is the precipitating "transaction" giving rise to the issuance of the check. This constitutes an unresolved material fact.

In its petition, as well as its motion for summary judgment, Plaintiff bank seeks to limit the "transaction" out of which the check arose, to the first check ($18,198.00) given by Merit to L.B. Smith Company, for which a substitute check was provided after Merit's stop-payment order.[6] Defendants' answers to Plaintiff bank's interrogatories, however, suggest that the pertinent "transaction" is much broader, involving an on-going contractual relationship arising from work performed by L.B. Smith Company for Merit. In these answers Defendants claim that Merit owed Defendant L.B. Smith Company $79,-512.47, of which $76,407.47 had been paid. The amount paid included payment on the check at issue, $18,198.00. Defendants also

---

4. The Texas Supreme Court also held that Citizens National Bank showed no unconscionable loss. *Bryan*, 628 S.W.2d at 763. The supreme court stated that the purpose of restitution is to prevent unconscionable loss to the party paying out funds and unjust enrichment to the party receiving the payment. *Id.* The supreme court stated the following:

A bank which mistakenly pays over a stop order can usually charge its customer's account. Under § [400.4–403] of the Code, the bank will not suffer a loss unless its customer proves he suffered a loss because of the payment. Section [400.4–403] states: 'The burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer.' In order to prove a loss under the Code, a customer must prove he was not liable to the payee on the check. Since Citizens National has not shown that its customer, B & G Construction, was not liable on the check to Bryan, the bank has not shown that it suffered a loss.

*Id.* (citing Tex. Bus. & Com.Code Ann. § 4.403).

5. We note that section 400.1–103 expressly provides that the common law principles of law and equity (including restitution and unjust enrichment) shall supplement the provisions of the Uniform Commercial Code "unless displaced by the particular provisions of this chapter...." § 400.1–103. The provisions of section 400.4–407 do not purport to displace any common law remedies. § 400.4–407; *Bryan*, 628 S.W.2d at 764. Indeed, section 400.4–407 seeks "to prevent unjust enrichment."

6. In this connection, *see Dunnigan v. First Bank*, 217 Conn. 205, 585 A.2d 659, 663 (1991)(holding that in determining whether a customer suffered a "loss" under [section 400.4–403], the focus is on the check itself and on the transaction underlying it, and not on whether there were other prior, unrelated transactions between the maker and payee of the check).

stated that Merit owed an additional $3,105.00, which had not been paid.

Therefore, under the "transaction" suggested by Defendants' answers to Plaintiff bank's interrogatories, in order for Plaintiff bank to prevail against Defendant L.B. Smith Company, Plaintiff bank had to show that Merit had a defense with respect to the contractual transaction between Merit and L.B. Smith Company. *See Bryan,* 628 S.W.2d at 762. However, in Plaintiff bank's motion for summary judgment, no proof was submitted showing that Merit had a defense to Defendants' claim.

Where, as here, the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment must be overruled. *See J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 761 (Mo. banc 1996). Accordingly, we reverse and remand.

In the interest of justice, we reiterate the comments of the Texas Supreme Court in its holding in *Bryan,* to-wit:

> A bank that mistakenly pays a check over a stop-payment order has several remedies. The bank may simply charge the customer's account for the amount of the payment. If the customer claims against the bank for wrongful payment, then the bank may implead the payee under [section 400.4–407] of the Code and assert against him any defenses which the customer asserts against the bank. Also, the bank may decide not to debit the customer's account and instead file suit against the payee of the check either for restitution or for recovery on the underlying contract as subrogee to the customer's rights. Under either theory, the bank may recover only to the extent it proves the drawer of the check was not liable to the payee.

*Bryan,* 628 S.W.2d at 764.

Based on the foregoing, we need not address Defendants' remaining assignment of error.

The judgment is reversed and the cause remanded for further proceedings.

PARRISH, P.J. and SHRUM, J., concur.